**Certiorari Granted, May 3, 2011, No. 32,944**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-040**

**Filing Date: March 14, 2011**

**Docket No. 30,041**

**FREEDOM C.,**

　　　　**Petitioner-Appellant,**

**v.**

**JULIE ANN D.,**

　　　　**Respondent,**

**and**

**BRIAN D. and PEGGY D.,**

　　　　**Petitioners-Appellees,**

**IN THE MATTER OF THE GUARDIANSHIP**
**OF PATRICK D.,** a child.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Michael T. Murphy, District Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Jocelyn Drennan
Albuquerque, NM

for Appellant

The Pickett Law Firm, LLC
Mark L. Pickett
Las Cruces, NM

for Appellees

1

**OPINION**

**SUTIN, Judge.**

**{1}** Freedom C. (Father) appeals an order denying him custody of his and Julie Ann D.'s (Mother) child (Child) and granting guardianship with legal and physical custody to Mother's parents, Brian D. and Peggy D. (Grandparents), pursuant to the Kinship Guardianship Act (the Act), NMSA 1978, §§ 40-10B-1 to -15 (2001). Father complains that the district court erred in applying the Act in what was a custody battle between Mother and Father, when Mother lived with Grandparents, Mother alone agreed to the guardianship, and Father objected to the guardianship. Father also complains that even if the Act were applicable, the guardianship was ordered prematurely and with insufficient information. A tangential complaint is that the court conditioned Father's right of visitation with Child on Father's consent to complete disclosure of his immigration records. We hold that the district court erred in granting Grandparents' petition for guardianship under the Act because the statutory prerequisites for granting the petition did not exist.

**BACKGROUND**

**{2}** In October 2008, Father filed a petition against Mother to determine custody and time sharing relating to Child, who was born in September 2005. At the time of the petition, Father had physical custody of Child, which he obtained approximately two weeks earlier as a result of filing a domestic violence proceeding that was ultimately dismissed. Mother filed an emergency motion regarding custody. Mother did not work full-time, and Father was in the United States on a student visa with no permanent right to stay in the United States. Following an evidentiary hearing in the district court, at which Father and Mother were represented by counsel and testified, and Grandparents also testified, the court entered an October 2008 order granting sole legal and physical custody of Child to Grandparents with all authority to make all legal custody decisions for Child "[i]n the interim, until further order of the [c]ourt." The court set out visitation and other conditions for the parties. The court also appointed a 706 expert to make recommendations in regard to legal and physical custody and visitation. Father sought reconsideration of the visitation conditions. In January 2009, the district court entered a stipulated amended interim order regarding visitation.

**{3}** In early March 2009, proceeding pro se, Father filed a lengthy motion in which he requested the court to act in various ways, including: (1) ordering Grandparents to be brought in as parties, (2) awarding him overnight visitation and giving him more rights to be involved in Child's education, (3) considering alleged adverse effects on Child from the existing detrimental circumstances, (4) awarding him temporary physical custody pending the 706 expert's evaluation and report, (5) ensuring that Child's psychological and emotional health needs were appropriately met, and (6) maintaining the status quo in several respects.

**{4}** Following a March 5, 2009, hearing on Father's motion and other various motions, the court entered an order and then an amended order determining that Grandparents "shall

2

retain temporary sole legal and primary physical custody," granting Father certain visitation and setting out certain visitation conditions, and joining Grandparents as parties to the action. The court set out several requirements and admonished Mother and Father in certain respects. The court found that Father's immigration status was relevant to custody and ordered Father to complete, execute, and provide certain release documents to Grandparents' counsel in order for counsel to obtain from the appropriate governmental agencies Father's immigration records and status.

{5}    In April 2009, Father was detained by immigration officials and confined by the Department of Homeland Security in a detention facility in El Paso, Texas, pending deportation, on the ground that he was subject to removal from the United States because his student visa had expired. In July 2009, Grandparents filed a petition under the Act for guardianship and custody of Child. In their petition, Grandparents alleged, among other things, that: (1) Father was currently in federal custody awaiting deportation proceedings; (2) Father was unable to provide adequate care, maintenance, and supervision of Child; (3) Mother would consent to appointment of Grandparents as guardians of Child; (4) Child had resided with Grandparents for a period of more than ninety days immediately preceding the date of the petition; (5) Mother resided with Grandparents; (6) Grandparents assisted Mother in the care of Child and also provided financial support; (7) Mother and Father currently had legal custody of Child; and (8) the pending matter involved custody of Child. Mother subsequently requested the court to grant her joint legal custody with Grandparents. These motions were followed by Father's motion for summary judgment in his favor on Grandparents' petition. In a hearing on August 31, 2009, on pending motions, at which Father appeared telephonically because he was still detained, the court decided to defer action on the custody issues because of Father's continued detention and the question of how his immigration status would be resolved. The court nevertheless heard Grandmother's recitation of the child's custody status.

{6}    Father was released from detention in September 2009, and he filed numerous motions and other documents, including several relating to custody and to Grandparents' petition seeking kinship guardianship under the Act. Among other assertions and challenges, Father contended that the statutory requirements for a kinship-guardian appointment had not been met, that detention could no longer be a reason to challenge his ability to care for Child, that he was best suited to raise Child, that his constitutional rights as a fit biological parent would be infringed by awarding guardianship to Grandparents, that the kinship-guardian process was being used by Mother and Grandparents to prevent Father from gaining custody of Child, and that the district court should await the 706 expert's recommendations and follow the recommendations.

{7}    Following notices for a hearing on custody and on all motions, at an evidentiary hearing on October 19, 2009, the parties testified on kinship guardianship and custody, and Father also presented evidence relating to his immigration and work status, including that his student visa had been reinstated, he was legally in the United States, he was enrolled in college, action would be taken to terminate the removal process, and he would be applying for a work permit. At the outset of the hearing, the court stated that it intended to fully resolve the case that day. Father's immigration attorney testified about Father's immigration

3

status, and the court accepted Father's tender of anticipated witnesses' testimony as to Father's ability to care for Child and Father's support network. Mother's testimony indicated that Child was totally dependent on Grandparents for support since Child's birth. The court was not satisfied with Father's representations as to his immigration status and found Father to be "totally uncredible." At the close of the hearing, the court verbally offered several thoughts and determinations, essentially indicating that it wanted Father to continue to have a parental role through visitation and that Mother or Father might at some future time be able to gain custody, but that full physical and legal custody of Child at this time was given to Grandparents.

{8}     The district court entered an initial custody order on November 4, 2009. However, on December 4, 2009, the court entered an amended order and found that the requirements of the Act had been met. This amended order found that Mother had consented to the guardianship; Child had resided with Grandparents for more than ninety days preceding the date their petition was filed; the parents were "unable, at this time, to provide adequate care, maintenance, and supervision for . . . [C]hild"; Grandparents had been providing for the care of Child since his birth and neither Mother nor Father were "capable[,] at this time[,] of providing a financially or emotionally stable home for . . . [C]hild under the current circumstances"; and it was in Child's best interest to grant Grandparents' petition and to grant them sole legal and physical custody of Child. In the aforementioned orders, the court granted Grandparents' petition and legal and physical custody of Child, granted Father timesharing and telephonic visits, discussed child support and health care costs, and stated that the court's "ruling on the kinship guardianship petition shall be reviewed by this [c]ourt in [twenty-four] months." Also on November 4, 2009, the court filed an order on Mother's motion to show cause that set out various provisions and requirements, including a provision stating that Father's immigration records were "relevant to the ongoing custody and visitation matters[,]" ordering Father to execute documents necessary to allow Mother "to have access to all of [Father's] immigration records[,]" and stating that "[Father's] execution of said documents [was] a condition of his continuing visitation with [Child]."

**Father's Appellate Issues**

{9}     Father appeals the district court's grant of Grandparents' petition for kinship guardianship for two reasons. First, Father contends that the court's order appointing Grandparents as kinship guardians under the Act did not include findings sufficient to satisfy all of the statutory requirements and that, on the record, the court could not have found that the requirements were met. Second, Father contends that, even were the Act applicable, the court's guardianship order was premature and based on insufficient information. Father also appeals the district court's order conditioning Father's right to visitation on his written consent to release to Mother all of his immigration records.

**Standards of Review**

{10}     On the guardianship custody issue, this case requires us to interpret the provisions of the Act and also to determine whether the findings of the district court were sufficient to support application of the Act and to permit the court to grant Grandparents' petition. We

4

review de novo issues of statutory construction and whether findings of fact support the conclusions and application of law. *In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶ 7, 145 N.M. 500, 201 P.3d 169. Because of our disposition addressing the issue of application of the Act, we will not review whether the guardianship order was prematurely entered.

**The Act**

{11}    We first set out pertinent provisions of the Act. Section 40-10B-2 states its policy and purpose:

>   A.    It is the policy of the state that the interests of children are best served when they are raised by their parents. When neither parent is able or willing to provide appropriate care, guidance[,] and supervision to a child, it is the policy of the state that, whenever possible, a child should be raised by family members or kinship caregivers.

>   B.    The . . . Act is intended to address those cases where a parent has left a child or children in the care of another for ninety consecutive days and that arrangement leaves the child or children without appropriate care, guidance or supervision.

>   C.    The purposes of the . . . Act are to:

>       (1)    establish procedures to effect a legal relationship between a child and a kinship caregiver when the child is not residing with either parent; and

>       (2)    provide a child with a stable and consistent relationship with a kinship caregiver that will enable the child to develop physically, mentally[,] and emotionally to the maximum extent possible when the child's parents are not willing or able to do so.

Section 40-10B-8, in pertinent part, provides:

>   A.    Upon hearing, if the court finds that . . . the requirements of Subsection B of this section have been proved and the best interests of the minor will be served by the requested appointment, it shall make the appointment. In other cases the court may dismiss the proceedings or make any other disposition of the matter that will serve the best interests of the minor.

>   B.    A guardian may be appointed pursuant to the . . . Act only if:

5

(1)      a parent of the child is living and has consented in writing to the appointment of a guardian and the consent has not been withdrawn;

(2)      a parent of the child is living but all parental rights in regard to the child have been terminated or suspended by prior court order; or

(3)      the child has resided with the petitioner without the parent for a period of ninety days or more immediately preceding the date the petition is filed and a parent having legal custody of the child is currently unwilling or unable to provide adequate care, maintenance[,] and supervision for the child or there are extraordinary circumstances; and

(4)      no guardian of the child is currently appointed pursuant to a provision of the Uniform Probate Code.

C.      The burden of proof shall be by clear and convincing evidence, except that in those cases involving an Indian child as defined in the federal Indian Child Welfare Act of 1978, the burden of proof shall be proof beyond a reasonable doubt.

Section 40-10B-12(A) permits "[a]ny person . . . [to] move for revocation of a guardianship created pursuant to the . . . Act."

**DISCUSSION**

**Whether the Act's Requirements Were Met**

{12}    Father asserts that the district court failed "to make findings that satisfy in full the statutory requirements for appointment of a kinship guardian[.]"  Father contends that his consent for the guardianship appointment was required under Section 40-10B-8(B)(1), but was never given.  He also contends that the requirement in Section 40-10B-8(B)(3) that Child reside with Grandparents *without the parent* for the required ninety-day period was not met and could not be met because Mother continually resided with Grandparents and Child before and after the petition was filed.  He further contends that the court also did not and could not find as required in Section 40-10B-8(B)(3) that a parent having legal custody of the child was unable to provide adequate care, because early in the case the court had granted legal custody to Grandparents and, therefore, at the time the petition was filed and granted, neither parent had legal custody.  Finally, Father argues that the court did not find that the operative facts met the standard of extraordinary circumstances in Section 40-10B-8(B)(3).

{13}    We begin our analysis of whether the Act's requirements were met with Father's arguments that overlay his specific points.  Father refers to cases, articles, and provisions of the Act leading into his view that Grandparents and Mother and the court have improperly

6

used the Act to exclude Father from custody and to in effect place custody in Mother, against the purpose intended by the Legislature, which was "to give legal recognition to the de facto parental status of third-party caregivers to whom parents have voluntarily entrusted the care of their child." Instead, according to Father, the Act was "used by Mother, in alliance with Grandparents, as an offensive weapon in [a] custody battle[,]" with an "agenda" that "enable[d] Mother to remain dependent on them while acting as a full-time parent during Child's early years and while completing her education." As Father sees it, the Act was "invoked only to give Mother the upper hand in maintaining custody of Child in her family home to the exclusion of Father." Further, Father sees the guardianship as contrary to the intent of the Act by allowing one parent, Mother, who continues to function as a parent, and the guardians, who are Mother's parents, to live together with Child in an arrangement that helps Mother to become a more successful single parent while limiting Father to restricted visitation and allying to divest Father's parental rights and to deny him custody.

{14}     In regard to the Act, Father more specifically argues that the district court's reliance on Subparagraphs (1) and (3) of Section 40-10B-8(B) was unsupported. First, with respect to Subparagraph (1), Father argues that under the circumstances here in which both parents are living and Father is "very much in the picture[,]" his consent is required, and to create a guardianship without his consent and over his objection and solely with Mother's consent would infringe on his parental rights to the extent of making the guardianship "constitutionally suspect." According to Father, the court's failure to find that Father consented means that the court's findings were not sufficient to establish an essential requirement for application of the Act.

{15}     Second, Father argues that Subparagraph (3) requiring that the child has resided with the petitioner *without the parent* "should be construed to require that, for a guardian to be appointed for a child with two living parents, the child must have been living with the prospective guardian without *either* parent[.]" That circumstance, according to Father, "is the factual scenario around which the [Act] was designed" based on the policy, intention, and purpose of the Act as set out in Section 40-10B-2(A), (B), and (C)(1). Moreover, Father complains that because neither parent had legal custody at the point the guardianship was established, the court could not find, and did not find, as required under Section 40-10B-8(B)(3), that *a parent having legal custody of Child* was currently unwilling or unable to provide the required care.

{16}     Grandparents argue that a plain reading of the Act requires that "a parent" in Section 40-10B-8(B)(1) be unambiguously read to require only Mother's consent and not Father's. Grandparents emphasize the court's critical concern, which was Child's best interests, and flatly assert that "[t]his case begins and ends with the best interests of Child." They further appear to justify the application of the Act based on a district court's exercise of equitable power and flexibility in custody matters. In oral argument before this Court, Grandparents explained (1) that the district court had in mind a definite plan for Child that was in Child's best interests; (2) that the court wanted to carry that plan out through application of the Act; (3) that, as expressed by the court, the plan included having both parents be a part of Child's life while Grandparents were guardians and allowed for the possibility that Mother or Father could, in the future, gain custody; and (4) that the court narrowly tailored the relief through

giving Father visitation rights, requiring both parents to attend parenting classes, allowing Father to return to court once his immigration status was clear, and setting a judicial review of its order to occur in twenty-four months. We are not persuaded by Grandparents' arguments.

**{17}** A kinship guardianship "represents very serious consequences for the parent." *In re Victoria R.*, 2009-NMCA-007, ¶ 28 (Pickard, J., specially concurring); *cf. State ex rel. Children, Youth & Families Dep't v. Pamela R.D.G. (In re Pamela A.G.)*, 2006-NMSC-019, ¶ 11, 139 N.M. 459, 134 P.3d 746 ("The interest of parents in the care, custody, and control of their children is a fundamental liberty interest."). We confine our analysis and decision in this case to the facts of this case and the requirements in Section 40-10B-8(B)(1) and (3). We do not believe that the express policy, intent, and purposes of the Act read as a whole and together with either of those two requirements for guardianship will support an application of the Act under the present circumstances. A kinship guardianship can be granted only on petition of a kinship caregiver or other caregiver as defined in Section 40-10B-5(A). A proceeding under the Act is not brought by a parent. By its language and apparent intent, the Act exists to permit, if not encourage, kinship guardianship in instances where parents are unwilling or unable to provide appropriate care, guidance, or supervision of their child and, upon satisfaction of the requirements in Section 40-10B-8(B) of the Act, if the child's best interests will be served by the guardianship. *See* §§ 40-10B-2(A), -8(A), (B).

**{18}** We do not read the Act as Grandparents and the district court read it, namely, that a plain reading of the consent requirement in Section 40-10B-8(B)(1) requires the conclusion that, no matter the circumstance, it takes the consent of only one parent to invoke the guardianship. To the contrary, in our view the words "a parent" in Sections 40-10B-2(B) and 40-10B-8(B)(1) must be read to mean both parents when both parents are living and have the capacity to give consent. We see no valid reason for application of the Act under the circumstances in the present case. Both parents are living and able to give consent. Nothing in the Act persuades us that the Legislature intended that where both parents are living and able to consent to a guardianship under the Act but are unable to provide appropriate care, guidance, or supervision to their child, a kinship guardianship could be granted based on the consent of only one parent. We note that, here, Father objected to the guardianship.

**{19}** Other provisions in the Act support our view. For example, "[i]t is the policy of the state that the interests of children are best served when they are raised by their *parents*." Section 40-10B-2(A) (emphasis added). Further, a purpose of the Act is to "establish procedures to effect a legal relationship between a child and a kinship caregiver when the child is not residing with *either* parent[.]" Section 40-10B-2(C)(1) (emphasis added). Statutory construction rules say that we should construe the singular to include the plural. *See* NMSA 1978, § 12-2A-5(A) (1997) (stating that statutory language in the singular includes the plural). We note, too, Supreme Court Form 4-988 NMRA, setting out a form of order appointing a kinship guardian by consent, indicates that the court has reviewed the sworn petition "and the consent of the [parents,]" and in its use notes for Form 4-988 states that "[the] form order may be used if both parents have signed a [consent,]" and "may also

be used if one of the parents of the child is deceased or if the parent's parental rights have been terminated." *See* Form 4-988.

{20} Furthermore, we see nothing in the Act indicating that the Legislature intended that the Act apply where the parents, even when unable to provide care, guidance, or supervision for their child, are separated and one parent moves out to reside with the child at the home of a grandparent or other relative. Such an arrangement would enable one parent to utilize the Act to unfairly engage in in-the-home, continual, and personal parenting of the child to the exclusion of the other parent. The evidence also does not support a finding under Section 40-10B-8(B)(3) that Child resided with Grandparents without Mother, and that Mother (much less Mother and Father) had legal custody of Child during the critical ninety-day period in that section. In regard to the intent and purpose expressed in the Act, this was not a case in which the parents having legal custody left a child in the care of someone else for the ninety-day period and that arrangement left the child without appropriate care, guidance, or supervision. *See* § 40-10B-2(B). Nor did the procedure effect a legal relationship between a child and a kinship caregiver when the child was not residing with either parent. *See* § 40-10B-2(C)(1).

{21} We fail to see why, instead of a guardianship, an interim custody order would not be permissible and appropriate when it places legal custody with a third-party relative while one of the parents also lives with the third-party relative until the custody battle is resolved. Although the case did not arise under the Act or on particularly similar facts as those in the present case, our statements in *In re Guardianship of Sabrina Mae D.*, 114 N.M. 133, 139, 835 P.2d 849, 855 (Ct. App. 1992), a case involving a dispute between a mother and her grandparents, are insightful and apropos.

> In New Mexico, while a district court is invested with subject matter jurisdiction to grant a petition for guardianship of a minor or to adjudicate custody disputes between parents and non-parents involving children . . . over objection of a parent, guardianship proceedings are not the proper means to involuntarily terminate a parent's right to custody of his or her children. In adjudicating competing custody claims between a parent or parents, and third parties, if the court determines that a child's custody should be placed with a non-parent, it is not a requirement that the court also issue letters of guardianship to the parties awarded custody. Although custody issues constitute a component of guardianship proceedings involving a minor child, the court may award or continue custody in third parties without issuing letters of guardianship.

We do not read in the Act a legislative intent that a kinship guardianship be established in the type of arrangement that existed in the present case.

{22} A petitioner for kinship guardianship under the Act cannot prevail simply because parents are unable to care for their child or because it is in a child's best interests that someone other than the parents have custody of the child. The petitioner must satisfy one of the three prerequisites in Section 40-10B-8(B). The district court's findings in this case

9

do not state facts that fully satisfy the prerequisites upon which a kinship guardianship can be established. Nor is there evidence that Grandparents met any of those prerequisites. In addition, the intent and purpose of the Act were not served by its application. The district court did not offer any rationale as to why the Act needed to be applied in lieu of the continuation of its existing order placing Child's interim physical and legal custody in Grandparents.

**{23}** We hold that Grandparents failed to establish any prerequisite for application of the Act, that the district court's findings did not support the grant of Grandparents' petition for kinship guardianship under the Act, and that the court erred in granting the petition. We therefore reverse the district court's grant of Grandparents' petition under the Act. We see no need to address Father's argument in regard to the prematurity of the district court's determination. We also see no need to address the issue of conditioning Father's visitation on his signing the appropriate documents for release of his entire immigration records to Mother or Grandparents. However, we express our concern about the breadth of the order as well as an invasion into a privacy interest Father may well have in disclosure of the records, given that the record fails to indicate why Father's entire immigration record is needed at this stage of the proceeding and why, even assuming that the record might contain information relevant to the question of the Child's best interests, the record could not be reviewed by the district court in camera and restricted as necessary in order to assure that whatever privacy right Father may have is not unnecessarily or improperly invaded. During the oral argument before this Court, Father indicated that an in camera review might be a satisfactory way to resolve this issue.

**CONCLUSION**

**{24}** We reverse the district court's order granting Grandparents' petition for a kinship guardianship under the Act and the order establishing the kinship guardianship. We remand for further proceedings in regard to the issues relating to custody of Child, without regard to kinship guardianship.

**{25}** **IT IS SO ORDERED.**

          **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

**CYNTHIA A. FRY, Judge**

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Freedom C. v. Julie Ann D.*, Docket No. 30,041**

**AE**               **APPEAL AND ERROR**
AE-SR                Standard of Review

**CD**               **CHILDREN**
CD-CS                Custody
CD-KG                Kinship Guardianship

**ST**               **STATUTES**
ST-IP                Interpretation
ST-LI                Legislative Intent