**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMSC-017

Filing Date: May 30, 2012

Docket No. 32,944

In the Matter of Guardianship of PATRICK D., a child,

FREEDOM C.,

       Petitioner-Respondent,

v.

BRIAN D. and PEGGY D.,

       Petitioners-Petitioners.

ORIGINAL PROCEEDING ON CERTIORARI
Michael T. Murphy, District Judge

The Pickett Law Firm, L.L.C.
Mark L. Pickett
Las Cruces, NM

for Petitioners

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward R. Ricco
Jocelyn C. Drennan
Albuquerque, NM

for Respondent

**OPINION**

**CHÁVEZ, Justice.**

**{1}**    Several months after being granted sole legal and physical custody of Patrick D. (Child), Brian D. and Peggy D. (Grandparents) filed a petition for guardianship and custody pursuant to the Kinship Guardianship Act (the Act), NMSA 1978, §§ 40-10B-1 to -15 (2001). Julie Ann D. (Mother), Grandparents' daughter, consented to the guardianship, but

1

Freedom C. (Father) opposed it. After an evidentiary hearing, the district court found both Mother and Father unfit to raise Child. The district court granted guardianship to Grandparents, granted time-sharing privileges to both Mother and Father, and held that it would review the guardianship arrangement in twenty-four months, which would have been on or about November 4, 2011.

**{2}** Father appealed to the Court of Appeals, which reversed the district court. *Freedom C. v. Julie Ann D. (In re Guardianship of Patrick D.)*, 2011-NMCA-040, ¶¶ 1, 24, 149 N.M. 588, 252 P.3d 812. The Court of Appeals analyzed whether the prerequisites of Section 40-10B-8(B) had been satisfied, confining its analysis to Sections 40-10B-8(B)(1) and (3). *In re Guardianship of Patrick D.*, 2011-NMCA-040, ¶ 17. The Court of Appeals held that the consent provision in Section 40-10B–8(B)(1) was not satisfied because both parents did not consent to the guardianship. *In re Guardianship of Patrick D.*, 2011-NMCA-040, ¶ 18. The Court of Appeals also held that Section 40-10B-8(B)(3) was not satisfied because Mother continued to reside with Grandparents and Child and because neither Mother nor Father "had legal custody of Child during the critical ninety-day period." *In re Guardianship of Patrick D.*, 2011-NMCA-040, ¶ 20. The Court of Appeals also concluded that because neither of the prerequisites it analyzed under Section 40-10B-8(B) were satisfied, the district court did not have the authority to grant a guardianship of Child to Grandparents. *In re Guardianship of Patrick D.*, 2011-NMCA-040, ¶ 22. Instead, the Court of Appeals opined that the district court should simply have continued the custody arrangement it previously ordered without creating a guardianship. *Id.* ¶ 21.

**{3}** We granted a petition for writ of certiorari filed by Grandparents to consider (1) whether application of the Act is appropriate under the circumstances of this case, and (2) whether any of the prerequisites for its application were met. *Freedom C. v. Brian D. (In re Guardianship of Patrick D.)*, 2011-NMCERT-005, 150 N.M. 667, 265 P.3d 718. Because we conclude that Section 40-10B-8(B)(3) was met under the facts, circumstances, and procedure of this case, we reverse the Court of Appeals and remand to the district court to schedule a hearing to review the guardianship arrangement as previously anticipated by its order.

## I.    PROCEDURAL AND FACTUAL HISTORY

**{4}** This case has an unusual procedural history. Child, Mother, and Father lived with Grandparents for three years, during which time Grandparents financially supported the entire family. In October 2008, Father moved out of the house after Mother ended their relationship. Father filed a petition for a protective order, alleging domestic abuse by Mother. By filing the petition, Father gained temporary custody of Child. Two weeks later, the district court dismissed Father's petition, finding that it was not supported by substantial evidence. Mother filed an emergency motion seeking custody of Child, and both parents sought sole legal and physical custody of Child. In response, Father filed a petition to establish paternity, determine custody and time-sharing, and assess child support.

2

**{5}**     The district court held a hearing on Mother's emergency motion on October 27, 2008.  Each parent testified that the other parent had engaged in dangerous behavior toward Child.  The district court found that it was in Child's best interests for Grandparents to have temporary sole legal and physical custody, with an opportunity for Mother and Father to have time-sharing arrangements.[1]  The district court also appointed an expert under Rule 11-706 NMRA to make recommendations to the court regarding custody.

**{6}**     At some point after this hearing, Father was detained by immigration officials because he had remained in the United States after his student visa had expired.  Grandparents filed a petition for appointment of guardianship and custody under the Act on July 15, 2009, almost nine months after being granted sole legal and physical custody of Child, and while Father remained in detention.  The district court held a hearing on all pending motions on October 19, 2009, after Father had been released from detention.  Father, Mother, Grandparents, and Father's immigration attorney all testified during that hearing.  The district court found Mother and Father unfit to raise Child, granted Grandparents' petition for kinship guardianship, and provided time-sharing for Mother and Father.  The district court also held that it would review the kinship guardianship and time-sharing in twenty-four months.

## II.     DISCUSSION

**{7}**     The Act was enacted to ensure that children in New Mexico have the opportunity to be raised by their relatives when both of their parents are unwilling and/or unable to care for them.  The Legislature explained the Act's policy and purposes as follows:

> A.     It is the policy of the state that the interests of children are best served when they are raised by their parents.  When *neither parent* is able or willing to provide appropriate care, guidance and supervision to a child, it is the policy of the state that, whenever possible, a child should be raised by family members or kinship caregivers.
>
> B.     The Act is intended to address those cases where a parent has left a child or children in the care of another for ninety consecutive days and that arrangement leaves the child or children without appropriate care, guidance or supervision.
>
> C.     The purposes of the Act [40-10B-1 NMSA 1978] are to:
>
> > (1)     establish procedures to effect a legal relationship

---

[1]It is not clear from the record under what authority the district court entered this order, although it may have been under the extraordinary circumstances doctrine recognized in *Vescio v. Wolf*, 2009-NMCA-129, ¶ 9, 147 N.M. 374, 223 P.3d 371.

3

between a child and a kinship caregiver when the child is not residing with *either parent*; and

> (2)    provide a child with a stable and consistent relationship with a kinship caregiver that will enable the child to develop physically, mentally and emotionally to the maximum extent possible when the child's *parents* are not willing or able to do so.

Section 40-10B-2 (emphasis added).

**{8}**    A person appointed to be a guardian under the Act "has the legal rights and duties of a parent except the right to consent to adoption of the child and except for parental rights and duties that the court orders retained by a parent." Section 40-10B-13(A). A certified copy of the appointing order is satisfactory proof of the guardian's authority. Section 40-10B-13(C). Another important goal of a kinship guardianship is to give the parents an opportunity to maintain or rebuild their relationship with the child. *See* §§ 40-10B-8(E), -12(A).

**{9}**    The Act grants district courts the authority to appoint a kinship guardian where "the court finds that a qualified person seeks appointment, the venue is proper, the required notices have been given, *the requirements of Subsection B . . . have been proved* and the best interests of the minor will be served by the requested appointment." Section 40-10B-8(A) (emphasis added). At issue in this case is whether "the requirements of Subsection B . . . have been proved." *Id.*

**{10}**    Subsection B provides that:

> A guardian may be appointed pursuant to the Act [40-10B-1 NMSA 1978] only if:

> > (1)    *a parent* of the child is living and has consented in writing to the appointment of a guardian and the consent has not been withdrawn;

> > (2)    *a parent* of the child is living but all parental rights in regard to the child have been terminated or suspended by prior court order; *or*

> > (3)    the child has resided with the petitioner without *the parent* for a period of ninety days or more immediately preceding the date the petition is filed and *a parent* having legal custody of the child is currently unwilling or unable to provide adequate care, maintenance and supervision for the child or there are extraordinary circumstances; and

4

(4)     no guardian of the child is currently appointed pursuant to a provision of the Uniform Probate Code [45-1-101 NMSA 1978].

Section 40-10B-8(B) (emphasis added).

**{11}**    Grandparents contend that "parent" in Subsection B should be interpreted to mean that as long as one parent meets a requirement of Section 40-10B-8(B), the district court is authorized to consider granting a guardianship under the Act, even if the other parent does not meet any of the requirements.  Grandparents rely on the language of Subsection B(1), which requires only that "*a* parent" has granted consent for the district court to be able to consider a kinship guardianship.  Section 40-10B-8(B)(1) (emphasis added).  On the other hand, Father contends that *both* parents must grant their consent for the district court to consider a kinship guardianship for the provisions of Subsection B(1) to apply.  Father suggests that "a parent" as used in Subsection B(1) should be read to mean "both parents."  This legal argument implies that this Court must read each alternative prerequisite in Section 40-10B-8(B) as an exclusive alternative such that *both* parents must satisfy the *same* prerequisite for the Act to apply.

**{12}**    The way in which the parties frame the issue would give our courts only two options under the Act.  Our courts could grant a guardianship (1) if only one parent meets one of these conditions, or (2) if both parents meet the same condition.  We conclude, however, that neither of these interpretations is correct, and that the Legislature intended that both parents need to satisfy at least one of the three conditions, regardless of whether they satisfy the same condition.

**A.     Requiring Both Parents to Meet One of the Prerequisites of Section 40-10B-8(B), While Permitting Each to Meet a Distinct Prerequisite, Is Consistent With Both the Plural and the Singular Meanings of the Term "Parent" in This Section.**

**{13}**    We review questions of statutory construction de novo.  *Debbie L. v. Galadriel R. (In re Guardianship of Victoria R.)*, 2009-NMCA-007, ¶ 7, 145 N.M. 500, 201 P.3d 169.  In interpreting statutory language, "[w]e look first to the plain language of the statute." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105.  Ultimately, our goal in reviewing statutes is to effectuate the Legislature's intent. *State v. Cleve*, 1999-NMSC-017, ¶ 8, 127 N.M. 240, 980 P.2d 23.  The Legislature has enacted the Uniform Statute and Rule Construction Act, NMSA 1978, §§ 12-2A-1 to -20 (1997), to assist courts with interpreting legislation.

**{14}**    Section 12-2A-5(A) provides that the use of the singular *or* the plural in statutory language includes both the singular *and* the plural. *In re Guardianship of Patrick D.*, 2011-NMCA-040, ¶ 19.  Therefore, Section 40-10B-8(B) must be read to encompass both the singular and the plural meanings of the word "parent."  The word "parent" must retain both

its singular meaning (that only one parent need satisfy any given subsection) and its plural meaning (that each parent must meet the requirement of at least one subsection). Under this reading, each parent must meet one of the three prerequisites, regardless of whether each parent meets the same prerequisite. This interpretation is consistent with the policies and purposes that underlie the Act.

**{15}** The Legislature stated two policies in support of the Act: (1) "that the interests of children are best served when they are raised by their parents," and (2) "[w]hen neither parent is able or willing to provide appropriate care, guidance and supervision to a child . . . whenever possible, a child should be raised by family members or kinship caregivers." Section 40-10B-2(A). The Legislature also stated two purposes in enacting the Act: (1) to "establish procedures to effect a legal relationship between a child and a kinship caregiver when the child is not residing with either parent," Section 40-10B-2(C)(1), and (2) to "provide a child with a stable and consistent relationship with a kinship caregiver that will enable the child to develop physically, mentally and emotionally to the maximum extent possible when the child's parents are not willing or able to do so," Section 40-10B-2(C)(2). These policies and purposes must be read together and harmonized. *See State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 (recognizing that separate provisions of the same Act must be read as a harmonious whole). The policy statement relevant to this case is the policy which provides that "[w]hen neither parent is able or willing to provide appropriate care, guidance and supervision to a child, it is the policy of the state that . . . a child should be raised by family members or kinship caregivers." Section 40-10B-2(A). The purpose relevant to this case is Section 40-10B-2(C)(2), which is to "provide a child with a stable and consistent relationship with a kinship caregiver that will enable the child to develop physically, mentally and emotionally to the maximum extent possible when the child's parents are not willing *or* [not] able to do so." (Emphasis added.) Reading the relevant policy statement in harmony with the relevant purpose, we interpret the Act to require courts to protect and facilitate relationships between a child and kinship caregivers when neither of the child's parents are able and/or willing to care for the child. In addition, however, the Act should be applied to allow the parents to maintain or rebuild their relationship with the child when doing so would be in the child's best interests. *See* § 40-10B-8(E).

**{16}** Our conclusion that the relevant policy and purpose of the Act is to facilitate and protect a relationship between the child and kinship caregivers when neither parent is able and/or willing to care for the child is consistent with each prerequisite in Section 40-10B-8(B). Subsection B(1) requires a parent's written consent to the appointment of a guardian, which indicates the parent's unwillingness to care for the child. Subsection B(2) applies if all of the parent's rights regarding the child have been terminated or suspended, thus making the parent unable to care for the child. Subsection B(3) applies when the child has not resided with one or both parent(s) for at least ninety days and one of the parents, who has legal custody of the child, is unwilling or unable to care for the child, or if there are extraordinary circumstances. When Subsection B(3) is applicable, both parents are deemed to be unable and/or unwilling to care for the child. The common thread between all of these

6

prerequisites is that both parents be unable and/or unwilling to care for the child.

**{17}** If we adopted Grandparents' interpretation that only one parent needs to satisfy Subsection B, then courts could grant kinship guardianships even when one parent is able and willing to properly care for a child. That result would ignore the Legislature's clear intent to provide for guardianships only in those circumstances where *neither* parent can fulfill this role.

**{18}** Conversely, if we were to read Section 40-10B-8(B) as requiring both parents to satisfy the same prerequisite, meaning that both parents must be unable or both must be unwilling to care for the child, the Act would fail to protect those children who have one unfit parent and one unwilling parent. Such a result squarely conflicts with the Legislature's clear intent, stated in Section 40-10B-2(A), that "[w]hen neither parent is able or willing to [care for his or her child], it is the policy of the state that [the] child should be raised by family members or kinship caregivers." Moreover, if the consent prong could only be applied when both parents consent, an unfit or absentee parent would have the right to veto a guardianship, despite that parent's inability or demonstrated unwillingness to care for the child. Such a result would be inconsistent with the Legislature's concerns for the child's best interests. *See* § 40-10B-8(A) (incorporating the "best interests of the minor" standard into the inquiry). Thus, we read Section 40-10B-8(B) as requiring each parent to meet one of its conditions, but not as requiring both parents to satisfy the same condition.

**{19}** Turning to the issue at hand, we are asked to decide whether the district court properly applied the Act in this case. We conclude that the district court properly applied the Act because the record shows that both parents satisfied Section 40-10B-8(B)(3). Before explaining why the parents satisfy Section 40-10B-8(B)(3), we address Father's contention that Grandparents did not preserve their argument regarding this subsection.

**B.     The Parties Adequately Preserved the Issue of Whether Both Parents Satisfied Any of the Provisions of Section 40-10B-8(B).**

**{20}** Father makes two arguments as to why this Court should only consider Subsection B(1). First, he contends that the parties did not properly raise Section 40-10B-8(B)(3) before the district court. Second, Father argues that only Subsection B(1) is before this Court because the petition for certiorari only requested this Court to review Subsection B(1). We conclude that the parties "fairly invoked" the district court's ruling regarding Subsections B(1), B(2), and B(3), although the district court did not specify which subsection was proven by Grandparents when the court granted their petition for guardianship and custody. *See* Rule 12-216(A) NMRA (requiring parties to fairly invoke the ruling of the court in order to preserve an issue for appellate review).

**{21}** To properly plead a request for guardianship under Section 40-10B-5(B)(1), a petitioner must plead basic "facts that if proved will meet the requirements of Subsection B of Section 8 of the Act." Grandparents' petition and Mother's supporting motion to proceed

7

to determine legal and physical custody listed facts that would support application of Subsections B(1), B(2), and B(3). To satisfy Section 40-10B-8(B)(1), Grandparents alleged that Mother consented to the kinship guardianship appointment. They also alleged that both Mother and Father had legal custody. However, Grandparents acknowledged during oral argument before the district court that the district court had previously awarded Grandparents sole legal and physical custody of Child. This acknowledgment may have been relevant to application of Section 40-10B-8(B)(2). Also arguably consistent with Section 40-10B-8(B)(2), Mother's motion requesting the district court to proceed to determine legal and physical custody stated that, at the time of the petition, Grandparents "ha[d] sole temporary legal and physical custody of the child by order of this Court." Finally, to satisfy Section 40-10B-8(B)(3), Grandparents alleged that "[t]he minor child has resided with [Grandparents] for a period of more than ninety (90) days immediately preceding the date of this petition" and "[t]he child's father is unable to provide adequate care, maintenance, and supervision for the child."

**{22}** Father also specifically addressed all three subsections in his response to Grandparents' petition. Regarding Subsection B(3), Father argued that "[t]he petition fails to meet . . . item (iii) . . . [of Section 40-10B-8(B)] in that neither the mother nor the father had legal custody of the child per temporary order entered on October 31, 2008." Father cannot claim that Subsection B(3) was not before the district court when he actually argued the merits of granting a guardianship under Section 40-10B-8(B)(3) before the district court. As a result, the issue is adequately preserved for our review. In addition, even if we were to conclude that Grandparents did not adequately present this issue to the district court, because Father specifically argued the matter, the issue is preserved with respect to both Father and Grandparents. *See, e.g.*, *Grant v. Cumiford*, 2005-NMCA-058, ¶ 37, 137 N.M. 485, 112 P.3d 1142 (finding an issue preserved with respect to the respondent, even though it had only been raised and argued by a third party in the district court).

**{23}** Father's second argument, that the only issue in dispute before this Court is whether Subsection B(1) was satisfied in this case, is also without merit. The petition for writ of certiorari asks us whether the Court of Appeals properly concluded that Grandparents "did not meet the prerequisites for application of the [Act]," a phrasing which does not limit this Court to reviewing Subsection B(1). Consequently, we are free to assess the applicability of any of the subsections of Section 40-10B-8(B).

**C.      The District Court's Findings Adequately Support Its Application of the Act.**

**{24}** We now discuss why we conclude that Subsection B(3) was satisfied in this case. Subsection (B)(3) provides that:

> [T]he child has resided with the petitioner without *the parent* for a period of ninety days or more immediately preceding the date the petition is filed and *a parent* having legal custody of the child is currently unwilling or unable to provide adequate care, maintenance and supervision for the child or there are

8

extraordinary circumstances.

Section 40-10B-8(B)(3) (emphasis added).

**{25}** Reference to "the parent" in the first sentence could be to either or both parents. In this case, the record reflects that Child resided with Grandparents without Father for more than ninety days before the petition for appointment of guardianship and custody was filed with the district court. Reference to "a parent having legal custody" can also refer to either parent. *Id.* As noted by Father, the district court had previously granted temporary sole legal and physical custody of Child to Grandparents. Thus, neither parent had legal or physical custody of Child. The authority relied upon by the district court for doing so is not in the record. The district court did not make a finding that Mother and Father were unfit to care for Child when it initially ordered legal and physical custody in favor of Grandparents, nor did the district court specify that "extraordinary circumstances" justified the change in legal and physical custody. Section 40-10B-8(B)(3).

**{26}** Thus, the record is not clear whether the district court was suspending all of the rights of the parents by granting sole legal and physical custody to Grandparents. Had the court done so, Section 40-10B-8(B)(2) would support the kinship guardianship. Because the district court also specified in its initial order that Father and Mother should have visitation privileges, it is reasonable to conclude that the district court also wanted both parents to continue to have some say regarding Child. The district court apparently wanted to afford both parents an opportunity to prove their willingness and their ability to care for Child.

**{27}** Although the procedure employed by the district court was unusual, we conclude that the court acted in a manner consistent with the spirit and intent of the Act, which includes Section 40-10B-8(B)(3). The district court (1) imposed the burden of proof on Grandparents, despite its previous order granting them sole legal and physical custody; (2) found that neither Mother nor Father was fit to care for Child, consistent with Subsection (B)(3); (3) included in its order a visitation requirement for both parents, evincing an intent to allow Mother and Father to maintain or reestablish a relationship with Child; (4) agreed to review the guardianship arrangement in twenty-four months; and (5) entered an order under the Act, a certified copy of which serves as proof of Grandparents' authority with respect to legal decisions involving Child, consistent with Section 40-10B-13(C).

**{28}** Further, the Act requires a petitioner to plead and prove which subsection(s) of Section 40-10B-8(B) apply justifying a kinship guardianship. Sections 40-10B-5(B) & -8. An appropriate pleading puts the respondents on notice of the allegations. Sections 40-10B-5 & -6. At the hearing on the petition, the petitioner must prove the allegations by clear and convincing evidence. Section 40-10B-8(C). In this case, had the district court concluded that Grandparents did not prove by clear and convincing evidence that Father was unwilling or unable to care for Child, the district court could not have granted the kinship guardianship to Grandparents. However, the district court found that Father was not fit to care for Child. Father did not challenge this finding. Mother expressed her unwillingness to care for Child

9

by consenting to the kinship guardianship. We conclude that these findings satisfy both Section 40-10B-8(C) and the spirit of Section 40-10B-8(B)(3).

**{29}** Father also argued before the district court that Section 40-10B-8(B)(3) could not technically be satisfied because neither parent had "legal custody" of Child at the time Grandparents filed their petition for guardianship. The Court of Appeals also adopted this reasoning. *See In re Guardianship of Patrick D.*, 2011-NMCA-040, ¶ 20. Father's rigid textual interpretation improperly ignores the "extraordinary circumstances" language also found in Section 40-10B-8(B)(3), which we read as a fail safe to allow courts to ensure that the Act is applied in a manner that adheres to the spirit of the Act. As we have previously recognized, cases that come under the Act often involve unconventional family structures and unconventional facts. *See In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶ 12. It would undermine the spirit of the Act to allow a court to grant a kinship guardianship when the court finds both parents, who have legal custody, to be unfit, but not to allow a kinship guardianship when those parents, found to be unfit, have temporarily been deprived of legal custody over the child, for the protection of the child. Such a result would be anomalous. Consequently, we hold that a case in this unique posture falls within the spirit of the Act and the scope of Section 40-10B-8(B)(3), even though the Legislature may have failed to contemplate these precise facts when it passed the Act.

**{30}** Thus, we conclude that the Act was applied appropriately under the unique facts, circumstances, and procedure of this case. The complexity of this case would have been reduced had the district court articulated the findings of fact which supported the court's award of sole legal and physical custody to Grandparents and had the court stated the legal authority for its order. In addition, review of this case would have been less arduous had the district court also specified the basis for granting a kinship guardianship under these facts.[2] District courts are encouraged to do so in the future.

**{31}** Two additional issues were raised by Father that merit our response. First, Father alleges that the Act should not be applied in a way that favors one parent over the other. Second, Father contends that this matter should be remanded to the Court of Appeals instead of the district court so that the Court of Appeals can address a notice issue raised by Father but not addressed by the Court of Appeals in light of its disposition of the case.

**D.      The Fact that Mother Remained in the Same House as Child Does Not Preclude Application of the Act.**

---

[2]For example, the district court may have declared that its prior order granting sole legal and physical custody to Grandparents was intended to suspend all of Mother's and Father's parental rights for purposes of Section 40-10B-8(B)(2). Alternatively, the district court may have announced that it considered the parents to have legal custody of Child for purposes of Section 40-10B-8(B)(3).

**{32}** Father contends that the Act should not be applied in this case because "[t]he KGA, which was intended to benefit children by enabling kinship caregivers to serve as surrogate parents, here was used to help one of Child's natural parents to defeat the other in a custody dispute." The Court of Appeals also adopted this rationale, explaining that allowing the Act to apply here would allow one unfit parent "to utilize the Act to unfairly engage in in-the-home, continual, and personal parenting of the child to the exclusion of the other parent." *In re Guardianship of Patrick D.*, 2011-NMCA-040, ¶ 20. We are not persuaded by this contention for three reasons.

**{33}** First and foremost, once the district court finds both parents unfit, as happened in this case, the court's duty is to act in the child's best interests. *See Shorty v. Scott*, 87 N.M. 490, 492-94, 535 P.2d 1341, 1343-45 (1975). Therefore, the extent to which the custody arrangement incidentally benefits one biological parent more than the other is irrelevant in deciding the proper arrangement under the Act once both parents have been deemed unfit.[3] The fact that the district court's arrangement incidentally benefits Mother does not invalidate this arrangement.

**{34}** Second, as pointed out by the Court of Appeals, even if the kinship guardianship is set aside, the district court should have continued the interim custody arrangement in favor of Grandparents. However, even under that arrangement, Mother could continue to live with Grandparents and Child until the custody dispute is resolved. *In re Guardianship of Patrick D.*, 2011-NMCA-040, ¶ 21. Therefore, whether Child was in Grandparents' legal and physical custody as a result of a kinship guardianship or other formal custody arrangement is irrelevant. Mother would have still been in the same household as Grandparents and Child.

**{35}** Third, applying the Act, rather than being "unfair[]," *id.* ¶ 20, advances the important goal of allowing the parents to maintain and rebuild a relationship with the child, Section 40-10B-8(E). This provision evinces an interest in encouraging the rehabilitation of parents who are presently unfit, rather than discouraging such rehabilitation. The result here should advance Mother's rehabilitation, and the provision for Father's visitation with Child also is consistent with this goal. Encouraging such rehabilitation also seeks to fulfill the expressed legislative policy under the Act that "the interests of children are best served when they are raised by their parents." Section 40-10B-2(A). Disposition of this case under the Act was entirely appropriate.

**E.     Father's Argument that He Received Insufficient Notice Is Moot Because Even**

---

[3]Notably, Father also had an equal opportunity to nominate potential guardians with whom he could have resided upon his release from immigration detention. Consequently, neither parent is inherently disadvantaged by allowing a parent with a close relationship to the proposed guardians to reside with them and maintain a close relationship with Child, if the district court awards guardianship.

**if His Claim Has Merit, the Court of Appeals Can Only Order Relief to which Father Is Already Entitled.**

**{36}**     Father suggests that if we affirm the district court, we should remand this case to the Court of Appeals to address the issue of whether the district court erred in considering the merits of the petition (1) when Father was not given adequate notice of the hearing, and (2) before the district court had received the recommendation of the Rule 11-706 expert. However, we decline to remand this issue to the Court of Appeals because even if Father's claim has merit, the Court of Appeals can only order relief to which Father is already entitled, making this issue moot.

**{37}**     We have recognized that "prudential rules of judicial self-governance, like standing, ripeness, and mootness, are founded in concern about the proper—and properly limited—role of courts in a democratic society and are always relevant concerns." *New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 16, 149 N.M. 42, 243 P.3d 746 (internal quotation marks and citation omitted). "A case is moot when no actual controversy exists, and the court cannot grant actual relief." *State v. Pieri*, 2009-NMSC-019, ¶ 7, 146 N.M. 155, 207 P.3d 1132 (internal quotation marks and citation omitted). We previously found moot a defendant's argument that the district court erroneously ordered the defendant's commitment for a crime that was not covered by the statute upon which the district court relied. *State v. Adonis*, 2008-NMSC-059, ¶ 1, 145 N.M. 102, 194 P.3d 717. Because this Court had found the commitment consistent with a different crime that *was* covered by the statute and remanded to the district court to enter a new commitment order consistent with its opinion, it held that the additional complaint about the present commitment order was moot. *Id.* In contrast, we found another defendant's challenge to a conviction was not moot, even though both the sentence and parole had been served, because the conviction continued to have collateral consequences for the defendant. *See Garcia v. Dorsey*, 2006-NMSC-052, ¶ 17, 140 N.M. 746, 149 P.3d 62.

**{38}**     Here, as in *Adonis*, the Court cannot grant any actual relief that Father is not already entitled to receive. If the Court of Appeals were to determine that the decision was made without sufficient notice or information, all it could do is remand to the district court to provide a new hearing and consider the expert's report. Father is already entitled to a new hearing on the guardianship issue under the terms of the guardianship order issued on November 4, 2009. The guardianship order stipulated that the order would automatically be reviewed in twenty-four months. That time period expired on November 4, 2011, which was several months ago. According to Father, the expert report is now available. On remand, Father can request that the district court reconsider the kinship guardianship and take into consideration the expert's report.

**{39}**     This matter is remanded to the district court to conduct a hearing post haste regarding the continued need for a kinship guardianship and the legal rights and responsibilities of Mother and Father. On remand, the district court should enter appropriate findings and specify under what authority the court is ruling, regardless of the outcome of the case.

## III. CONCLUSION

**{40}** The Court of Appeals is reversed and this matter is remanded to the district court for proceedings consistent with this opinion.

**{41}   IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index**

**APPEAL AND ERROR**
Standard of Review

**CHILDREN**
Custody
Kinship Guardianship

**STATUTES**
Interpretation
Legislative Intent