**Certiorari Denied, February 14, 2014, No. 34,474**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-029**

**Filing Date: November 26, 2013**

**Docket No. 32,421**

**STANLEY J. and KELLY J.,**

> **Petitioners-Appellees,**

**v.**

**CLIFF L.,**

> **Respondent-Appellant,**

**and**

**IN THE MATTER OF THE KINSHIP GUARDIANSHIP OF ADAM L. and ADRIAN L.,**

> **Children.**

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew Tatum, District Judge**

Queener Law Firm, P.C.
Richard L. Queener
Quentin Ray
Clovis, NM

for Appellees

Eric D. Dixon
Portales, NM

for Appellant

Aldridge Actkinson & Rutter

1

Marion Rutter
Clovis, NM

Attorney Ad Litem

**OPINION**

**VIGIL, Judge.**

**{1}** Cliff L. (Father) appeals an order granting Petitioners guardianship over his biological children, fourteen-year-old Adrian L. and sixteen-year-old Adam L. (Children), pursuant to the Kinship Guardianship Act (the KGA or the Act), NMSA 1978, §§ 40-10B-1 to -15 (2001). The district court concluded that, although Father was at all times fit, willing, and able to care for Children, extraordinary circumstances justified awarding the guardianship to Petitioners over Father's objection. We disagree and reverse.

**I. BACKGROUND**

**{2}** Father and Children's Mother were divorced in November 2002. Although both parents were found to be fit, primary physical custody of Children was awarded to Mother, and visitation to Father. Mother moved Children to Broadview, New Mexico, where they lived for the next eleven years, and Children attended school in Grady, New Mexico during this time. Father continued to live in Pilot Point, Texas, where he has family, and Children visited Father in Texas during the summers and holidays in the years that followed. Children have biological family in both Grady and Pilot Point.

**{3}** Mother developed cancer in 2006, which she battled for six years. While Mother received treatment for several days at a time over the years, Children stayed with their maternal grandparents; but when their grandmother got ill, they starting staying with Petitioners during the seven- to ten-day treatments. Petitioners have no biological relationship to Children, but they were Mother's friends and residents of Grady.

**{4}** Mother died on January 25, 2012. Two days later, on Friday, January 27, 2012, Petitioners filed a petition in the district court seeking their appointment as kinship guardians over Children pursuant to the KGA and that Petitioner Stanley J. be appointed temporary guardian of Children until notice could be served upon Father. Children also asked that the temporary guardianship be granted on grounds that Mother's funeral was going to be the next day (Saturday, January 28, 2012), that they had been living with Petitioners since Christmas, that Father was coming to take them to Pilot Point, and they desired to remain enrolled in the Grady schools, and remain surrounded by friends and family. The district court was told that Adam was a junior, on the varsity basketball team, and salutatorian of his class, and that Adrian was in the eighth grade, on the junior high basketball team, and valedictorian of his class. Further, the district court was advised that Children were doing "extremely well in their current environment given the current situation with their mother."

2

**{5}**     A hearing was held the same day the petition was filed, but Father did not attend because he was not aware of it.  At the hearing, Petitioner Stanley J. acknowledged that Father was a fit parent, but Children just wanted the court to hear their wishes to stay in Grady instead of being taken to Pilot Point by Father.  The district court found that Children's wishes not to be removed from their home, community, and school to be relocated against their wishes during the difficult time of Mother's passing qualified as extraordinary circumstances under the KGA and appointed Petitioner Stanley J. as temporary kinship guardian.

**{6}**     Father arrived in New Mexico to attend Mother's funeral and believed he would be taking Children back to Texas with him, but instead was served with a summons notifying him that Petitioner Stanley J., whom he had never met, was appointed temporary guardian of his children.  He immediately hired an attorney and filed a motion to dismiss on January 30, 2012, demanding that custody of Children be returned to him.  The district court orally denied Father's motion in a hearing held on February 2, 2012.

**{7}**     On August 27, 2012, the district court held a final hearing to determine if Petitioners should be appointed as permanent kinship guardians under the KGA. Several witnesses testified at this hearing on behalf of Children, regarding Children's established academic, athletic, and social life in Grady, the bond they had with Petitioners and their family, their desire not to move to Texas, and the potential for a negative impact on their motivation to continue to excel if forced to move.  Persuaded that these qualified as extraordinary circumstances, the district court issued an order appointing Petitioners as permanent kinship guardians over Children.  Father appeals.

## II.     DISCUSSION

**{8}**     Father argues that the appointment of Petitioners as guardians of Children must be reversed because the evidence failed to establish "extraordinary circumstances" as required under the KGA.  Because Father's argument requires us to interpret the meaning of "extraordinary circumstances" in the KGA, the question presented is one of statutory construction, which we review de novo. *In re Guardianship of Patrick D.*, 2012-NMSC-017, ¶ 13, 280 P.3d 909.  Moreover, in applying the legal standard of "extraordinary circumstances" to the facts before us, our standard of review is also de novo.  *In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶ 7, 145 N.M. 500, 201 P.3d 169 (Alarid, J.) (stating that the mixed questions of law and fact are subject to de novo review).[1]

---

[1]We cite to Judge Alarid's opinion in *Victoria R.*, however, the actual opinion of the Court is contained in the "special concurrence" written by Judge Pickard, which was joined in by Judge Sutin. *See Victoria R.*, 2009-NMCA-007, ¶ 23 (stating "[a]s we disagree with portions of Judge Alarid's opinion as well as the expansive and unnecessary rationales relied on to affirm, what is contained in this specially concurring opinion is actually the opinion of this Court").

**A.     The Kinship Guardianship Act**

**{9}**      The KGA provides that "[i]t is the policy of the state that the interests of children are best served when they are raised by their parents." Section 40-10B-2(A). However, "[w]hen neither parent is able or willing to provide appropriate care, guidance and supervision to a child, it is the policy of the state that, whenever possible, a child should be raised by family members or kinship caregivers." *Id.*  Because there is no evidence or assertion that Petitioners are family members of Children, we limit our consideration to the concept of a "kinship caregiver" as defined in the Act.  Under the Act, "kinship" includes "an adult with whom the child has a significant bond" and a "caregiver" is "an adult, who is not a parent of a child, with whom a child resides and who provides that child with the care, maintenance and supervision consistent with the duties and responsibilities of a parent of the child[.]" Section 40-10B-3(A), (C).

**{10}**     The parties do not dispute that the only applicable provision of the Act, which authorized the district court to appoint Petitioners as kinship guardians is Section 40-10B-8(B)(3).  Under this section, a guardian may be appointed "only if" it is proved by clear and convincing evidence that

> the child has resided with the petitioner without the parent for a period of ninety days or more immediately preceding the date the petition is filed[2] and a parent having legal custody of the child is currently unwilling or unable to provide adequate care, maintenance and supervision for the child *or there are extraordinary circumstances*[.]

*Id.* (emphasis added); Section 40-10B-8(C) (stating that the burden of proof is by clear and convincing evidence unless the case involves an "Indian child" as defined in the federal Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901-1963 (2006), in which case the burden of proof is beyond a reasonable doubt).  All other requirements of the Act must be complied with, and the appointment must be in the best interests of the child.  Section 40-10B-8(A). This case requires us to determine if the facts support a conclusion of law that "extraordinary circumstances" exist to warrant appointment of Petitioners as kinship guardians of Children.

**B.     The Meaning of Extraordinary Circumstances**

_____

[2]The parties dispute whether the requirement in Section 40-10B-8(B)(3) that "the child has resided with the petitioner without the parent for a period of ninety days or more immediately preceding the date the petition is filed" is applicable in this case.  However, it is not necessary for us to decide whether the ninety-day requirement only applies where there is an unwilling or unable parent as Petitioners argue, or whether it also applies when extraordinary circumstances are relied upon as Father argues, because the parties do not dispute that Father is a willing and able parent, and we conclude that extraordinary circumstances are not present in this case.

**{11}** The Act does not define what it means by "extraordinary circumstances." However, we are able to ascertain its contours from existing New Mexico case law. We begin with the parental preference doctrine, which has been followed in New Mexico for decades. For example, in *Shorty v. Scott*, 1975-NMSC-030, ¶ 8, 87 N.M. 490, 535 P.2d 1341, our Supreme Court held that the "parental right doctrine" creates a presumption in a custody dispute between a natural parent and a third party that the welfare and best interests will be served in the custody of the natural parent. In such a dispute, the non-parent has the burden of proving the contrary and that the parent is unfit. *Id.* ¶ 10.

**{12}** The potential for "extraordinary circumstances" overcoming the parental preference doctrine was recognized in *In re Adoption of J.J.B.*, 1995-NMSC-026, ¶ 59, 119 N.M. 638, 894 P.2d 994. This was an adoption case in which the father contested the adoption of his child after the mother had placed the child for adoption without the father's knowledge. *Id.* ¶ 1. After concluding that the adoption was void, the Supreme Court was still left with having to determine what standards would apply in determining who would have custody of the child on remand to the district court. *Id.* ¶ 57. The Supreme Court reiterated the presumptions of the parental preference doctrine, *id.* ¶ 58, and added that "[a] parent's right is not absolute and under *extraordinary circumstances*, custody of a child may be awarded to a nonparent over the objections of a parent." *Id.* ¶ 59 (emphasis added). Therefore, our Supreme Court agreed, " 'special facts and circumstances' might be found that would provide 'an extraordinary reason' for taking a child from its parent." *Id.* (citations omitted). The rationale for the exception is "the anticipation of unique situations that are beyond the usual unfit-parent criteria and are not expressly covered by statute or case law." *Id.*

**{13}** In *J.J.B.*, the mother placed her infant child for adoption when he was nine months old. *Id.* ¶ 1. At the time of the trial, the child had lived for over one and one-half years with the couple seeking to adopt him, during which time the father was only able to secure limited visitation with the child. *Id.* Our Supreme Court stated that an "extraordinary circumstance" in this situation "might arise if the child's contact with the biological parent has been so minimal that he or she has significantly bonded with the adoptive parents." *Id.* ¶ 61. However, the Court cautioned, "the test for this involuntary disruption of the bond between a parent and child is met only with great difficulty, and for evident reasons of humanity and policy." *Id.* (internal quotation marks and citation omitted). In fact, the Court suggested that the evidence must demonstrate that "'the psychological trauma of removal [of the child from the adoptive parents] is grave enough to threaten destruction of the child'" before an extraordinary circumstance will be found to exist. *Id.* (quoting *Bennett v. Jeffreys*, 356 N.E.2d 277, 284 (N.Y.1976)).

**{14}** We subsequently reiterated and expanded these principles in *In re Guardianship of Ashleigh R.*, 2002-NMCA-103, 132 N.M. 772, 55 P.3d 984, a case involving the appointment of a grandmother and her husband as guardians of a mother's daughters under the Probate Code. *Id.* ¶ 1. We reiterated that the parental preference doctrine creates a presumption that a child's interests will best be served in the custody of a parent and that in a custody dispute the nonparent has the burden of proving otherwise and that the parent is

unfit. *Id.* ¶ 14. We also reiterated that an otherwise fit parent may be denied custody based on "extraordinary circumstances." *Id.* ¶ 15. We added:

> Even when applying the extraordinary circumstances test, only "grave reasons" approaching, but not necessarily reaching, those required for termination of parental rights should overcome the presumption that children are better raised by their own parents. A finding of extraordinary circumstances must be based on proof of a substantial likelihood of serious physical or psychological harm, or "serious detriment to the child."

*Id.* ¶ 25 (citations omitted).

**{15}** We then turned to the facts and applied these principles. Although the mother had left her girls with grandparents for more than two years before the grandparents filed their petition, she maintained contact with them, and the girls were not strangers to her. *Id.* ¶ 30. When the petition was filed, the girls already looked to the grandparents as parental figures, and by the time of the final hearing in district court, the girls had lived with grandparents for more than three years. *Id.* The passage of time notwithstanding, we were not able to conclude that the separation was so long that the mother forfeited her right to the care and custody of her children. *Id.* Addressing any possible psychological harm that might arise from transferring custody to the mother, we emphasized that such harm could not be presumed, but must be proved by the party seeking to deprive the parent of custody on that basis. *Id.* ¶ 31. Moreover, we were careful to distinguish between proof of substantial likelihood of short-term emotional distress or apprehension, which was to be expected. *Id.* We therefore held that because the grandparents had not presented sufficient evidence of psychological damage if the girls were returned to the mother's custody, that the mother's voluntary relinquishment of custody and the girls' subsequent attachment to the grandparents did not constitute "extraordinary circumstances." *Id.* ¶ 32.

**{16}** *Victoria R.* is the first case in which we considered the applicability of "extraordinary circumstances" in a case under the KGA. 2009-NMCA-007, ¶ 7 (Alarid, J.) (noting that the issue at trial was whether "extraordinary circumstances" within the meaning of the KGA justified the appointment of guardians for the child). The dispute between Judge Alarid and the majority concurring opinion was whether *Ashleigh R.*, as a case decided under the Probate Code, should constitute dispositive authority for deciding the KGA case before it. *Victoria R.*, 2009-NMCA-007, ¶ 21 (Alarid, J.), ¶ 24. Judge Alarid would have recognized and given protection to a "psychological parent" under the KGA, *id.* ¶¶ 13-16 (Alarid, J.), a concept not directly addressed by the majority concurring opinion. Rather, the majority concluded that *Ashleigh R.* applied to the KGA and that *Ashleigh R.* was adequate authority for deciding the case on appeal. *Victoria R.*, 2009-NMCA-007, ¶¶ 29-30. "[T]o the extent that the Legislature used the words 'extraordinary circumstances' in the KGA, we believe it [had] extensive common-law antecedents on which it likely relied[.]" *Id.* ¶ 27.

**{17}** We agreed with the district court in *Victoria R.* that *Ashleigh R.*'s requirements were

satisfied. *Victoria R.*, 2009-NMCA-007, ¶ 29. The district court findings, supported by the evidence, were that "[the m]other left [the c]hild with [the p]etitioners, leading to full-time care, for three years and told them the placement would be permanent and they could adopt [the c]hild; where [the c]hild was primarily bonded to [the p]etitioners as her parents and would suffer significant depression and thereby a substantial likelihood of serious harm and detriment; and where [the f]ather consented to the guardianship[.]" *Id.* ¶ 29.

**{18}** *Patrick D.* involved another case under the KGA, 2012-NMSC-017, ¶ 1, and it provides us with additional guidance on what is meant by "extraordinary circumstances" in Section 40-10B-8(B)(3). Considering the policy statement in Section 40-10B-2,[3] together with the purposes of the KGA set forth in Section 40-10B-2(C),[4] our Supreme Court interpreted the KGA "to require courts to protect and facilitate relationships between a child and kinship caregivers when neither of the child's parents are able and/or willing to care for the child." *Patrick D.*, 2012-NMSC-107, ¶ 15. Our Supreme Court further declared that the prerequisites set forth in Section 40-10B-8(B), for awarding a kinship guardian, are consistent with these purposes and policies, and "[w]hen [Section 40-10B-8(B)(3)] is applicable, both parents are deemed to be unable and/or unwilling to care for the child." *Patrick D.*, 2012-NMSC-017, ¶ 16. Addressing the inclusion of "extraordinary circumstances" as a basis for awarding a kinship guardian over a parent's objection in Section 40-10B-8(B)(3), our Supreme Court said, "we read [the extraordinary circumstances basis] as a fail safe to allow courts to ensure that the Act is applied in a manner that adheres to the spirit of the Act" because "cases that come under the Act often involve unconventional

---

[3]Section 40-10B-2(A) provides:

It is the policy of the state that the interests of children are best served when they are raised by their parents. When neither parent is able or willing to provide appropriate care, guidance and supervision to a child, it is the policy of the state that, whenever possible, a child should be raised by family members or kinship caregivers.

[4]Section 40-10B-2(C) provides:

C.　　The purposes of the Kinship Guardianship Act are to:

(1)　　establish procedures to effect a legal relationship between a child and a kinship caregiver when the child is not residing with either parent; and

(2)　　provide a child with a stable and consistent relationship with a kinship caregiver that will enable the child to develop physically, mentally and emotionally to the maximum extent possible when the child's parents are not willing or able to do so.

7

family structures and unconventional facts." *Patrick D.*, 2012-NMSC-017, ¶ 29.

**C.      Extraordinary Circumstances Were Not Proved**

{19}    In order to overcome the presumption of the parental preference doctrine that the welfare and best interests of Children would best be served in the custody of Father, Petitioners were required to prove by clear and convincing evidence that they should be awarded custody due to extraordinary circumstances. The district court ruled that Petitioners satisfied their burden of proof, concluding:

> In consideration of the age of the minor children, the significant bonds between the minor children and the community, the eleven years living in the area, the significant bond between the minor children and the Petitioners, the lack of proactive effort of Respondent to foster and maintain relationships with the minor children, the academic and athletic status of the minor children in Grady, the unconditional care provided by the Petitioners, the potential negative effect a move to Texas would have on the minor children and the nomination of the Petitioners to serve as kinship guardians by the minor children, this [c]ourt finds by clear and convincing evidence the best interests of the minor children are served by the appointment of the Petitioners as the kinship guardians of the minor children pursuant to the [KGA].

{20}    We conclude that these findings fail to demonstrate extraordinary circumstances. We acknowledge that Children have suffered the tragic loss of their Mother to cancer. We also acknowledge that Children's home has been in and around Grady, that their ties to the community are very strong, and that Children "nominated" Petitioners to be their guardians.[5] Specifically, the evidence is that Children want to finish going to school in Grady; they are both involved in team sports; they are both doing well academically; and Children are eligible for scholarships to go to college through the lottery program only if they remain in New Mexico. There was also evidence that Children were adjusting well under the circumstances of Mother's death, and Petitioners feared that Children would stop trying to excel if they were forced to go to Texas.

{21}    On the other hand, it is undisputed that Father is a fit parent, and he desires to have custody of Children. Unlike the children in *Ashleigh R.* and *Victoria R.*, who had been left with the petitioners for years, the gaps in Father's custody of his children were due to the court-ordered custody arrangement in the divorce, not by his choice. The fact that Father may choose to move Children out of their present home community to Texas under the

---

[5] Section 40-10B-11(A) allows a child who has reached his fourteenth birthday to "nominate" a guardian under the KGA. However, such a nomination is only effective if the statutory requirements for appointment of a kinship guardian have first been satisfied.

circumstances will result in a life-changing experience for Children, and undoubtedly result in emotional stress or apprehension to Children. However, there is no evidence that such a move will result in substantial likelihood of serious psychological harm or other serious detriment to Children. Whether Children should be moved to Texas is admittedly a difficult decision, but it is a parenting decision for Father, not the courts, to make.

**{22}** We also note that while Petitioners are without question seeking to help Children and that there is a bond between themselves and Children, however, there is no evidence that separating Children from Petitioners will result in serious psychological harm to Children. Children had only lived with Petitioners for two days before the petition was filed and had only stayed with them for brief periods before Mother died. Moreover, their relationship with Children does not rise to the level of a "psychological parent" as described by Judge Alarid in *Victoria R. See* 2009-NMCA-007, ¶ 14 (Alarid, J.) ("Psychological parents are the adult caregivers who meet the child's emotional and physical needs on a day-to-day basis for a sufficient period of time that the child comes to view the adult caregivers as the child's actual parents.").

## III.    CONCLUSION

**{23}** The district court order appointing Petitioners as kinship guardians of Children is reversed.

**{24}    IT IS SO ORDERED.**

_____
                                                         **MICHAEL E. VIGIL, Judge**
**I CONCUR:**


_____
**TIMOTHY L. GARCIA, Judge**

**JONATHAN B. SUTIN (dissenting).**

**SUTIN, Judge (dissenting).**

**{25}** At the outset, I observe that the Majority's Opinion is silent, and the issues are apparently moot as to Adam, who turned eighteen in June 2013.

**{26}** I see two reasons that the district court should be affirmed. First, as a matter of law, extraordinary circumstances were present rendering the court's appointment of Petitioners as guardians appropriate under Section 40-10B-8(B)(3). Second, under Section 40-10B-11(A), Children were permitted to nominate a guardian and, barring a finding by the district court that the appointment of their chosen guardian would be contrary to their best interests, the court was permitted, if not required, to appoint a guardian accordingly.

**{27}** On the issue of extraordinary circumstances, we review the district court's factual findings for sufficiency of the evidence, and we review de novo the legal question as to whether those findings "taken together under all the circumstances . . ., amount to extraordinary circumstances." *Victoria R.*, 2009-NMCA-007, ¶¶ 7, 24-26; *see also Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 6, 306 P.3d 524 (stating that legal questions are reviewed de novo). In so doing, "we review the evidence in the light most favorable to support the [court's] findings, and we disregard contrary evidence." *Victoria R.*, 2009-NMCA-007, ¶ 25. On the issue of the district court's determination of what is in the best interests of children in terms of custody arrangements, our review is for an abuse of discretion. *State ex rel. Children, Youth & Families Dep't v. Senaida C.*, 2008-NMCA-007, ¶ 9, 143 N.M. 335, 176 P.3d 324.

**Extraordinary Circumstances**

**{28}** Section 40-10B-8(B)(3) provides that a guardian may be appointed pursuant to the Act if "the child has resided with the petitioner without the parent for a period of ninety days or more . . . and a parent having legal custody of the child is currently unwilling or unable to provide adequate care, maintenance[,] and supervision for the child *or* there are extraordinary circumstances[.]" (Emphasis added.) This case does not involve a situation in which Children lived with Petitioners for ninety or more days, nor is Father unwilling or unable to care for Children. Thus, the only relevant consideration under Section 40-10B-8(B)(3) is whether the circumstances here were "extraordinary."

**{29}** The meaning of "extraordinary circumstances" in the context of the KGA was discussed in *Ashleigh R.* and restated in this Court's opinion in *Victoria R.* It is defined as "a substantial likelihood of serious physical or psychological harm or serious detriment to the child." *Victoria R.*, 2009-NMCA-007, ¶ 28 (internal quotation marks and citation omitted); *see Ashleigh R.*, 2002-NMCA-103, ¶ 25 ("A finding of extraordinary circumstances must be based on proof of a substantial likelihood of serious physical or psychological harm or serious detriment to the child[.]" (internal quotation marks and citations omitted)). Our Supreme Court has interpreted the "extraordinary circumstances" language in Section 40-10B-8(B)(3) "as a fail safe to allow courts to ensure that the Act is applied in a manner that adheres to the spirit of the Act." *Patrick D.*, 2012-NMSC-017, ¶ 29.

**{30}** Father has not demonstrated, nor has the Majority held, that the district court's factual findings lacked substantial evidentiary support. As such, the court's findings provide the relevant factual framework for our analysis. *See* Rule 12-213(A)(4) NMRA (stating that the district court's uncontested findings are deemed conclusive). Thus, in reviewing the court's order, the remaining consideration is whether the findings support its legal conclusion that "extraordinary circumstances" exist that justify the decision to appoint Petitioners as kinship guardians. *See Victoria R.*, 2009-NMCA-007, ¶ 24 (recognizing that whether extraordinary circumstances are present is a legal question).

10

**{31}** In support of its "extraordinary circumstances" conclusion, the district court found, among other things, that Children, both of whom were in high school, were "excelling in academics and athletics in Grady" where they had lived for eleven years; that in Grady, unlike in Pilot Point, they had a supportive network of family and friends; and that under the circumstances, moving to Texas would have a "potential negative effect" on Children. Although the district court did not use *Victoria R.*'s language defining "extraordinary circumstances," it was not required to do so. The court's meaning was clear. By referencing the "potential negative effect" that would result from removing Children from their community and support system built over the course of eleven years and disrupting their academic and extracurricular standing during their high school years, the district court implicitly found that requiring Children to move to Pilot Point would be seriously detrimental to them. Thus, I would hold that, as a matter of law, extraordinary circumstances were present, rendering the court's decision proper under Section 40-10B-8(B)(3).

**Children's Preference and Best Interests**

**{32}** An additional basis for affirming the district court's decision in this case is found in Section 40-10B-11. In relevant part, Section 40-10B-11(A) provides that "[i]n a proceeding for appointment of a guardian pursuant to the [Act] . . . the court shall appoint a person nominated by a child who has reached his fourteenth birthday unless the court finds the nomination contrary to the best interests of the child[.]" Thus, in the context of the Act, children age fourteen or older are empowered to nominate their own guardians, and a conforming appointment is subject only to a court's broad discretion to determine whether their best interests will be served by the appointment. *Cf. Senaida C.*, 2008-NMCA-007, ¶ 9 (stating that the district court is "vested with broad discretion and great flexibility in fashioning custody arrangements . . . that will serve the best interests of the children" (emphasis, internal quotation marks, and citation omitted)).

**{33}** The district court quoted the language of Section 40-10B-11(A) in its decision. Although the court did not rely exclusively on Section 40-10B-11(A) in making its determination, it found that Children, who were ages fourteen and sixteen, respectively, themselves filed the petition nominating Petitioner, Stanley J., to be their guardian. *See* § 40-10B-11(A) (stating in the context of a child who nominates a guardian, that the court shall make the appointment unless the court finds the nomination contrary to the best interests of the child); *see also* § 40-10B-8(A) (stating that, in the context of "a qualified person seek[ing] appointment," the court shall make the appointment if, among other things, the best interests of the minor will be served). And it further found that the best interests of Children would be served by appointing Petitioners as Children's kinship guardians. Notably, Father does not challenge, on appeal, the court's best-interests determination, and it is not the purview of this Court to substitute its judgment for that of the district court in considering the best interests of Children absent an abuse of discretion. *See Senaida C.*, 2008-NMCA-007, ¶ 9 (stating that a best-interest determination in the context of a custody arrangement is within the district court's discretion); *cf. Mayeux v. Winder*, 2006-NMCA-028, ¶ 32, 139 N.M. 235, 131 P.3d 85 (stating that in reviewing a discretionary decision, we

11

will not substitute our judgment for that of the district court).

**{34}** Thus, considering that the teenage Children nominated Stanley J. to be their guardian, and considering that the court found that the best interests of Children would be served by appointing Petitioners as Children's kinship guardians and did not find the appointment contrary to their best interests, I would also affirm the court's decision on the basis of Section 40-10B-11(A).

**Additional Points**

**{35}** Respectfully, I think that the Majority's discussion of the parental preference doctrine is out of place under the circumstances of this case. *See* Majority Op. ¶¶ 11-15. I have found no authority supporting the injection of the parental preference doctrine into an analysis of extraordinary circumstances in the context of the Act. I see no reason why discussion of the parental preference doctrine is necessary or useful in terms of defining "extraordinary circumstances" under the law and circumstances here. *See* Majority Op. ¶ 1. *Victoria R.* defined "extraordinary circumstances." *See* 2009-NMCA-007, ¶ 28 (defining "extraordinary circumstances" as "a substantial likelihood of serious physical or psychological harm or serious detriment to the child" (internal quotation marks and citation omitted)). As defined, "extraordinary circumstances" is "a fail safe to allow courts to ensure that the Act is applied in a manner that adheres to the spirit of the Act . . . [in light of the] cases that come under the Act [which] often involve unconventional family structures and unconventional facts." *Patrick D.*, 2012-NMSC-017, ¶ 29. Neither *Victoria R.* nor *Patrick D.* considered the parental preference doctrine when evaluating the meaning of "extraordinary circumstances." Further, particularly given the express statutory preference given to Children under Section 40-10B-11(A), I have substantial difficulty with the notion that the parental preference doctrine should play any role in this case.

**{36}** I further question the Majority's reliance on *J.J.B.*, *Shorty*, and *Ashleigh R.* in the context of this case for the reason that none of those cases involved children who were of an age or maturity level to express their custody preferences to or be heard by the district court. *See J.J.B.*, 1995-NMSC-026, ¶¶ 1, 4 (stating that the child was four years old at the time of the court's review); *Shorty*, 1975-NMSC-030, ¶ 1 (indicating that the children were of preschool age); *Ashleigh R.*, 2002-NMCA-103, ¶ 31 (indicating that the children's custody preferences were expressed through their grandparents' testimony). Contrary to the circumstances of *J.J.B.*, *Shorty*, and *Ashleigh R.*, Children in this case were of an age and maturity level to express their preferences. In this case, Children's ages, their concomitant academic and athletic achievements, their expressed guardianship preference, and their established relationships in Grady were central to the court's determination.

**{37}** In short, I do not consider *J.J.B*, *Shorty*, and *Ashleigh R.* to be persuasive authority in the context of this case. Unlike circumstances involving small children, removing the teenage Children from Grady at this stage of their lives and under the circumstances here ignores Children's statutory preferences and their best interests. The opposite conclusion

12

views the facts in the light most favorable to Father, contrary to the rule that we review in a light most favorable to support the court's findings. *See Victoria R.*, 2009-NMCA-007, ¶ 25.

**{38}** Further, reliance on an unacceptable view expressed by the minority in *Victoria R.* relating to Children's "psychological parents," is also out of order. Majority Op. ¶ 22. Respectfully, Judge Alarid's minority view in *Victoria R.* was rejected in the opinion of the Court in *Victoria R.*, and even were it entitled to some consideration in some circumstances, in the context of this case it is factually irrelevant.

**{39}** Nothing should prevent Father from continuing visitation with Children. When Father and Children's Mother divorced, the court's final divorce decree ordered a visitation schedule for Father and Children that was to be controlling in the event that Mother and Father could not agree on a visitation schedule. Although the final divorce decree entitled him to more frequent visits, the district court in the present case found that Father exercised visitation with Children "during each summer and spring break vacations." In the present case, the district court ordered Father to follow the visitation that comported with the final divorce decree and additionally ordered that he have visitation with Children each Thanksgiving, Christmas, and spring break from school. Thus, Father may continue to visit Children, and he may do so more frequently than previously permitted.

**In Sum**

**{40}** I believe that extraordinary circumstances, Children's ages and statutory preferences, and the court's best-interests determination fully support the district court's decision.

_____
 **JONATHAN B. SUTIN, Judge**

**Topic Index for *Stanley J. v. Cliff L.*, No. 32,421**

**CONSTITUTIONAL LAW**
Fundamental Liberty Interest of Parents

**CHILDREN**
Custody
Kinship Guardianship

**DOMESTIC RELATIONS**
Child Custody
Visitation Rights

**STATUTES**
Interpretation

Legislative Intent