This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36392**

**PHILBERT P.,**

Petitioner-Appellant,

v.

**DOUGLAS P.,**

Respondent-Appellee,

**IN THE MATTER OF THE KINSHIP
GUARDIANSHIP OF SKYLER P.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY
Lyndy D. Bennett, District Judge**

Carter & Valle Law Firm, P.C.
Linda L. Ellison
Albuquerque, NM

for Appellant

Jarmie & Associates
Mark D. Standridge
Las Cruces, NM

for Appellee

Linda Riley-James
Gallup, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**M. ZAMORA, Judge.**

**{1}** Philbert P., maternal great-uncle (Uncle) of S.P. (Child), his then eleven-year-old nephew, appeals an order denying his petition for kinship guardianship of, Child, pursuant to NMSA 1978, Section 40-10B-8(B)(3) (2015) of the Kinship Guardianship Act (the KGA), NMSA 1978, §§ 40-10B-1 to -15 (2001, as amended through 2015). The district court denied Uncle's petition and ordered that Child be reunited with his biological Father. We affirm.

**BACKGROUND**

**{2}** Douglas P. (Father) and Valerie P. (Mother) raised Child together as the primary family unit for the first five to six years of Child's life. After Father and Mother separated, Father went to live in Washington, while Mother moved to New Mexico. Due to a terminal illness, Mother died on March 4, 2016. Prior to her death, Mother, Child, and Child's half-sister (Sister), lived with Uncle for at least two years. Following Mother's death, Father agreed to allow Child to continue to reside with Uncle and Sister temporarily so Child and Sister could grieve together. Ten days after Mother's death, Uncle filed an emergency petition for kinship guardianship in district court.

**{3}** On April 20, 2016, the district court held an initial hearing on the petition. Father traveled from Washington and appeared in person to express his opposition to Uncle's guardianship. Father expressed that he had wanted to take Child back to Washington with him sooner, but had allowed him to stay with his Mother during her illness. At the conclusion of the hearing, Uncle was awarded temporary guardianship, and the district court ordered that Child be assigned a guardian ad litem.

**{4}** On February 2, 2017, the district court held the merits hearing on Uncle's petition. Several witnesses testified regarding their relationship with Child, and regarding the relationship they observed between Child and Uncle, or Child and Father. Child's guardian ad litem testified that Child and Father should be reunited and that Father should be allowed to take Child with him to Washington. The district court also heard testimony regarding a home study that was conducted by the Yakama child welfare agency advising the district court that they did not observe anything that would cause concern if Child was to live in Father's home. Father testified regarding his desires to be reunited with his son.

**{5}** In its final order, the district court found that the Indian Child Welfare Act of 1978 (the ICWA), 25 U.S.C. §§ 1901-1963 (2018), applied to this matter; that Uncle did not establish by clear and convincing evidence that extraordinary circumstances existed for granting his petition for kinship guardianship, and; that it was in Child's best interests to be raised by his biological father. Uncle appeals.

**DISCUSSION**

## I. Uncle Did Not Prove Extraordinary Circumstances to Overcome the Parental Presumption

**{6}** Uncle relies on Section 40-10B-8(B)(3) of the KGA to assert there were extraordinary circumstances in this case to rebut the parental presumption and favor him being awarded guardianship. The district court concluded that Uncle did not meet his burden by clear and convincing evidence and thus denied his petition.

**{7}** "It has long been the rule that [p]arents have a natural and legal right to the custody of their children." *Shorty v. Scott*, 1975-NMSC-030, ¶ 10, 87 N.M. 490, 535 P.2d 1341 (internal quotation marks and citation omitted); *see Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[W]e have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children."); *see also Quilloin v. Wallcott*, 434 U.S. 246, 255 ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"). Under the KGA, "[i]t is the policy of the state that the interests of children are best served when they are raised by their parents." Section 40-10B-2(A). However, "[w]hen neither parent is able or willing to provide appropriate care, guidance and supervision to a child, it is the policy of the state that, whenever possible, a child should be raised by family members or kinship caregivers." Section 40-10B-2(A).

**{8}** "A guardian may be appointed . . . *only if . . .* a parent having legal custody of a child is currently unwilling or unable to provide adequate care, maintenance and supervision of the child or there are extraordinary circumstances[.]" Section 40-10B-8(B)(3). "This rule creates a presumption that the welfare and best interests of the minor child will best be served in the custody of the natural parents." *Shorty*, 1975-NMSC-030, ¶ 10. Thus, non-parents seeking guardianship in opposition to a biological parent bear the burden of proving extraordinary circumstances, and must do so by clear and convincing evidence. *Id*. ¶ 10.

**{9}** Father is an enrolled member of the Warm Springs Band of Indians and also has Yakama heritage. Child is an enrolled member of the Yakama Nation. On February 15, 2007, the Yakama Tribal Court for the Confederated Tribes and Bands of the Yakama Nation issued an order of paternity. The order declared Father as the natural father of Child, awarded joint custody of Child to both Mother and Father, and ordered that Father not pay child support. Father has stated that as biological father of Child, he wants Child returned to him.

**{10}** The court-appointed guardian ad litem met and interviewed the parties, their significant others, Child, and maternal and paternal relatives. She also reviewed the home study prepared by the Yakama child welfare agency. The guardian ad litem filed a report, an addendum to her report, and recommendations with the district court. Based on these contacts and observations, the guardian ad litem noted that both the Uncle's family and the Father's family loved and cared for Child; both want Child to live with them; and Child would be well care for in either household. The guardian ad litem's recommendations were that it was in the Child's best interests for Father to have legal

and physical custody of him and that it was not in Child's best interests to grant the petition for kindship guardianship. The district court found that the home study determined that Father's home was adequate and sufficient for Child. The district court also concluded that Father is a fit and proper parent and willing and able to raise the child.

**{11}** Because Father, who has legal custody of Child, is currently willing and able to provide adequate care, maintenance and supervision for the Child, we must determine if there are extraordinary circumstances to warrant the appointment of Uncle as Child's guardian. Interpreting the meaning of "extraordinary circumstances" as provided for by the KGA is a matter of statutory construction, which we review de novo. *Stanley J. v. Cliff L.*, 2014-NMCA-029, ¶ 8, 319 P.3d 662. We also conduct a de novo review when applying the legal standard of "extraordinary circumstances" to the facts before us. *Id.*

**{12}** The existence of extraordinary circumstances is one exception that permits the appointment of a non-parental guardian for a child under the KGA. *See id.* ¶ 12 (stating "the rationale for the exception is the anticipation of unique situations that are beyond the usual unfit-parent criteria and are not expressly covered by statute or case law" (internal quotation marks and citation omitted)). "Extraordinary circumstances for purposes of the KGA are circumstances other than the parent's current inability or unwillingness to provide the child with adequate care, maintenance, and supervision that justify appointing guardians for a child over the objection of the child's parents." *In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶ 9, 145 N.M. 500, 201 P.3d 169 (footnote omitted). "A finding of extraordinary circumstances must be based on proof of a substantial likelihood of serious physical or psychological harm, or serious detriment to the child." *In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 25, 132 N.M. 772, 55 P.3d 984 (internal quotation marks and citations omitted).

**{13}** The burden on non-parent caregivers to demonstrate extraordinary circumstances is very high. A disruption of the bond between parent and child is so disfavored, that our Supreme Court has suggested "that the psychological trauma of removal [of child from non-parent caregiver]" must rise "to threaten destruction of the child." *Stanley J.* 2014-NMCA-029, ¶ 13 (internal quotation marks and citation omitted). One way a non-parent caregiver has met the burden of proving extraordinary circumstances is when the caregiver is deemed to have become a "psychological parent." *See In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶ 14 (defining a "psychological parent" as one "who meets a child's emotional and physical needs on a day-to-day basis for a sufficient period of time that the child comes to view the adult caregivers as the child's actual parents").

**{14}** Uncle asserts that in his case, the extraordinary circumstances include: Child doing so well in "the only home he has ever known"; Father's failure to take any initiative to learn about Child's education; the close relationship Child has with his sister and his Uncle, and; a history of alcohol abuse and alleged domestic violence by Father. Uncle argues these extraordinary circumstances are enough to rebut the parental presumption that children should be raised by their biological parents.

**{15}** Uncle compares this case to other cases that have analyzed extraordinary circumstances under Section 40-10B-8(B)(3) the KGA, The cases he cites to are of no assistance to him under these facts; however, they are useful to our analysis. In *Stanley J.*, two teenage children were left behind when their mother died of cancer. Two days after their mother's death, the petitioners, who the teenage children were staying with, petitioned to assume guardianship. 2014-NMCA-029, ¶¶ 3, 20. Petitioners relied on Section 40-10B-8(B)(3) of the KGA, asserting there were extraordinary circumstances. *Stanley J.*, ¶¶ 4, 10. The biological father opposed the guardianship, and wanted to take the children back to his home town in Texas. *Id.* ¶ 4. The children were opposed to going with their father because they were doing so well socially, athletically, and academically while in New Mexico. The district court concluded that a forced moved would have a negative impact, which created "extraordinary circumstances." *Id.* ¶ 7. On appeal this Court disagreed that children's circumstances were extraordinary. *Id.* ¶ 20. This Court acknowledged the circumstances facing the children, including the loss of their mother, and their ties to the community, but nonetheless held that "there [was] no evidence that such a move [would] result in substantial likelihood of serious psychological harm or other serious detriment to [the c]hildren." *Id.* ¶ 21.

**{16}** Uncle attempts to distinguish *Stanley J.* from the case at hand, but there are more similarities than distinctions between the two. In both cases, the petitioners assert there will be emotional harm to the child, if the child is removed from the petitioning party. Like in *Stanley J.*, witnesses here testified that Child was doing well academically, and furthermore that Child was having the needs of his individual education plan met. Here, as in *Stanley J.*, there were also strong social ties to the community and the petitioner. In both cases, the child(ren) were coping well with the death of their mother. In *Stanley J.*, this Court held that though a move with their father would result in a life-changing experience for the children, "and undoubtedly result in emotional stress or apprehension to [the c]hildren[,]" it was a parenting decision for the father, not the courts, to make. *Id.* ¶ 21. This Court held that without evidence of a substantial likelihood of serious psychological harm or other serious detriment to the children, it would not award custody to the petitioning guardians. *Id.* ¶ 22. In *Stanley J.*, this Court concluded the circumstances were not enough to be deemed extraordinary. *Id.* ¶ 20.

**{17}** Uncle also points to *In re Guardianship of Victoria R.* to support his contention that he was a "psychological parent" to Child, and thus rebuts the parental preference. *See* 2009-NMCA-007, ¶ 16 (explaining that serving as a psychological parent is one way to rebut the presumption by creating extraordinary circumstances). In *Victoria R.*, this Court articulated the "crucial distinction" between biological and psychological parentage. *Id.* ¶ 14. Non-parent caregivers were defined to become psychological parents when a child comes to view such caregivers as their actual parents, because the caregivers meet the child's emotional and physical needs on a day-to-day basis for a sufficient period of time. *Id.* When the KGA petitioners have assumed the role of psychological parents, "to the extent that the child will suffer a significant degree of depression if the relationship with the psychological parents is abruptly terminated[,]" the parental preference presumption is sufficiently overcome. *Id.* ¶ 16 (internal quotation marks omitted). Such an effect is enough to establish extraordinary circumstances

within the meaning of KGA. *Id.* In *Victoria R.*, the district court found there were extraordinary circumstances, based on the child's bond with the petitioners. *Id.* ¶ 14. In that case, the child had been with the petitioners since she was about one-and-a-half years old, until at least the age of five years old, and she considered the petitioners her actual parents. *Id.* ¶ 13. This Court pointed to scholarship that asserts "children have no psychological conception of blood-tie relationships until quite late in their development." *Id.* ¶ 14 (citing Joseph Goldstein, et al., *The Best Interests of the Child: The Least Detrimental Alternative* 9 (1994)). Though testimony in this case does support Uncle's assertion that he and Child were closely bonded, we still do not find that it rises to the level of a psychological parent. In *Victoria R.* the child lived with the petitioners for a substantial part of her young life. *Id.* ¶ 1. In this case, Child lived with Uncle for only two years and for most of that time, his mother resided in the home as well. Further, in this case, Child had ongoing contact with Father, either through extended stays in Washington, or when Father came to Gallup, New Mexico to visit Child. Child knew and referred to Father as "Dad." The circumstances supporting psychological parentage in *Victoria R.*, are not like the circumstances in this case.

**{18}** We agree with the district court that there were no extraordinary circumstances supporting Uncle's position. Uncle did not establish that a move with Child's Father would create a substantial likelihood of serious psychological harm or other serious detriment, or destruction of Child; nor did Uncle establish that he rose to the level of a psychological parent. Uncle failed to meet his burden, by clear and convincing evidence, as required by Section 40-10B-8(B)(3) of the KGA.

## II.     The Indian Child Welfare Act

**{19}** The district court found that the ICWA does apply to this matter. Uncle argues on appeal that it does not apply in part because: Child was not removed from the custody of a parent or Indian custodian, by a non-tribal public or private entity, and; that because both Father and Uncle are from tribal communities, Child would inevitably be in a Native American home, which does not create the situation the ICWA was designed to remedy. Father argues that the ICWA does apply.

**{20}** "Determining the applicability of the ICWA requires us to interpret statutory language, which is . . . subject to de novo review." *Cherino v. Cherino*, 2008-NMCA-024, ¶ 7, 143 N.M. 452, 176 P.3d 1184. The relationship between ICWA and other state statutes similarly present questions of law that we review de novo. *See In re Esther V.*, 2011-NMSC-005, ¶ 14, 149 N.M. 315, 248 P.3d 863 (looking at the relationship between the ICWA and the state statute on abuse and neglect). Here, we examine the relationship between Section 40-10B-8(B)(3) of the KGA, and the ICWA, namely, 25 U.S.C § 1912 (2018).

**{21}** The single provision of the KGA relied on by Uncle, Section 40-10B-8(B)(3), requires that extraordinary circumstances must be based on "proof of a substantial likelihood of *serious physical or psychological harm*," or "*serious detriment* to the child[.]" *In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 25 (emphasis added)

(internal quotation marks and citation omitted). Extraordinary circumstances must be proved by "clear and convincing evidence." Section 40-10B-8(C).

**{22}** In comparison, under the ICWA, a court must have evidence before it that if the Indian child remains in the custody of the parent, it is "likely to result in *serious or physical damage* to the child." 25 U.S.C. §1912(e) (emphasis added). Pursuant to the federal statute, this burden must also be supported by "clear and convincing evidence[.]" 25 U.S.C. § 1912(e) (2018). [1] In both the KGA and the ICWA, the primary consideration is whether a party has shown by clear and convincing evidence any serious damage to the child. *See* § 40-10B-8(B)(3); 25 U.S.C. § 1912(e) (2018). [2] Because Uncle did not meet his burden required by the KGA, we need not address whether the ICWA applies and whether he met the identical burden of proof under the ICWA's similar statutory scheme.

**CONCLUSION**

**{23}** We affirm the district court's denial of Uncle's petition for kinship guardianship.

**{24} IT IS SO ORDERED.**

**M. MONICA ZAMORA Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**

---

1We note that *Stanley J.*, referring to the then current version of Section 40-10B-8(C) (2001), identified the burden of proof, involving an Indian child, as beyond a reasonable doubt. 2014-NMCA-029, ¶ 10. However, the current 2015 amendment to the statute changed the burden of proof, involving an Indian child, to clear and convincing evidence. *See* Section 40-10B-8.

2Under the ICWA, there is at least one additional requirement that must be met, namely the "testimony of a qualified expert witness," regarding the serious damage to the child. 25 U.S.C. § 1912(e). Uncle did not offer qualified expert witness testimony to comport with this requirement.