## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2022-NMCA-006**

**Filing Date: October 1, 2021**

**No. A-1-CA-37797**

**D.W.,**

     Petitioner-Appellant,

v.

**B.C.,**

     Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Jarod K. Hofacket, District Judge**

Released for Publication March 1, 2022.

Laflin, Pick & Heer, P.A.
C. Joseph Wiseman
Albuquerque, NM

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

B. C.
Silver City, NM

Pro Se Appellee

### OPINION

**YOHALEM, Judge.**

**{1}** D.W. (Grandmother) appeals the district court's dismissal of her petition for kinship guardianship of her then twelve-year-old granddaughter, M.C. (Child), pursuant to the New Mexico Kinship Guardianship Act, NMSA 1978, Sections 40-10B-1 to -15

(2001, as amended through 2015) (the Act).[1] Grandmother sought kinship guardianship pursuant to Section 40-10B-8(B)(3) of the Act after the unexpected death of Child's mother, alleging that there were extraordinary circumstances warranting the appointment. Section 40-10B-8(B)(3) states that the district court may appoint a kinship guardian when "the child has resided with the petitioner without the parent for a period of ninety days or more immediately preceding the date the petition is filed and a parent having legal custody of the child is currently unwilling or unable to provide adequate care, maintenance and supervision for the child or there are extraordinary circumstances." Grandmother's petition discloses that Child had resided with her for fourteen days, less than the full ninety days prior to the filing of the petition required by Section 40-10B-8(B)(3).

**{2}** Grandmother contends on appeal that (1) the district court erred in strictly construing the ninety-day residence requirement as a mandatory prerequisite to the filing of a kinship guardianship petition pursuant to Section 40-10B-8(B)(3), even when extraordinary circumstances are alleged; and (2) the district court erred in dismissing her petition on the alternative basis that the petition failed to allege facts sufficient to establish "extraordinary circumstances" under the Act as a matter of law. We reverse and remand for a full evidentiary hearing and a decision on the merits of Grandmother's kinship guardianship petition.

**BACKGROUND**

**{3}** Grandmother's verified petition seeking appointment as Child's kinship guardian was filed days after the unexpected death of Child's mother. Child had been living with Grandmother for fourteen days, since her mother was injured, when the petition was filed. Prior to her mother's injury, Child had lived since her birth in a house on the same property as Grandmother. Grandmother alleged a close relationship with Child based on daily contact since Child's birth. Grandmother reported that she currently was acting as Child's kinship caregiver, as defined by Section 40-10B-3(A) of the Act.

**{4}** Grandmother's petition alleged that Child suffered from severe mental and emotional problems that predated her mother's death; these symptoms had been exacerbated by deep grief; B.C. (Father) had proved unwilling to engage in psychotherapy and parenting instruction, which had been ordered by the court during parents' divorce; the divorce court had denied Father any contact with Child during the year preceding Mother's death; and the opinion of Child's therapist and the findings of the divorce court were that it would be detrimental to Child's mental and physical health to be placed in Father's care. Grandmother pleaded that extraordinary circumstances made serious detriment to Child likely if she was returned immediately to Father's custody and care. Grandmother also alleged that Father "is unable to provide adequate care, maintenance[,] and supervision for the child[,]" but did not rely on this as an independent basis for her petition for kinship guardianship.

---

[1] All references to the Act in this opinion are to the 2001 version of the statute, as amended through 2015. Grandmother's petition was filed prior to the 2020 amendments to the Act.

**{5}**     The district court granted Father's motion to dismiss Grandmother's petition for kinship guardianship, "[b]ecause the Petition does not meet the requirement of Section 40-10B-8[(B)(3)]" that Child has resided with Grandmother without a parent for a minimum of ninety days before the filing of the petition. The district court also dismissed the petition on the basis that the sudden death of a parent and Child's severe mental illness were each too common an occurrence to qualify as "extraordinary circumstances" under Section 40-10B-8(B)(3).

**{6}**     Although the district court dismissed the petition and affirmed legal custody of Child in Father, the court nonetheless refused to immediately return Child to Father's physical custody. Exercising its parens patriae authority, *see Ridenour v. Ridenour*, 1995-NMCA-072, ¶ 8, 120 N.M. 352, 901 P.2d 770, the district court retained limited jurisdiction, concluding that it was in Child's best interest for the court to supervise Child's transition from Grandmother to Father. The district court ordered Father to work with a reunification specialist to repair his relationship with Child, set a court-ordered goal of returning Child to Father's care within ninety days, and ordered Grandmother to cooperate with Child's transition to Father's care.[2]

**{7}**     Grandmother filed an appeal to this Court from the order of dismissal of her kinship guardianship petition, together with a petition for writ of error. The appeal and the writ of error have been consolidated for decision by this Court.

## DISCUSSION

### I.     Our Legislature Did Not Intend the Ninety-Day Residence Requirement to Be Strictly Applied When There Are Extraordinary Circumstances

**{8}**     A district court may appoint a kinship guardian when "[u]pon hearing, . . .  the court finds that a qualified person seeks appointment, the venue is proper, the required notices have been given, the requirements of [Section 40-10B-8(B)] . . . have been proved and the best interests of the minor will be served by the requested appointment[.]" Section 40-10B-8(A). In this case, there was no dispute that Grandmother was a qualified person, that venue was proper, and that required notices had been given. Grandmother sought kinship guardianship solely pursuant to Section 40-10B-8(B)(3).

**{9}**     The primary ground stated by the district court for dismissing the petition was Grandmother's failure to satisfy what the court concluded was a mandatory prerequisite for the appointment of a kinship guardian under Section 40-10B-8(B)(3)—that Child had resided with Grandmother without a parent for a period of ninety days before the petition was filed.

---

[2]The supplemental district court record submitted to this Court, along with a review of the district court record in Odyssey, shows that Child currently remains with Grandmother by court order, pursuant to the district court's general parens patriae authority to act in the best interest of the child.

**{10}** Grandmother argued in the district court, and continues to argue on appeal, that Section 40-10B-8(B)(3) should be read so that the ninety-day residence requirement applies only when a child's parents are alleged to be "currently unwilling or unable to provide adequate care, maintenance and supervision for the child[,]" and not when the petition alleges instead that there are extraordinary circumstances requiring appointment of a kinship guardian. Grandmother supports her claim with a close textual analysis, contending that the word "or" divides the phrase "there are extraordinary circumstances," from all of the language preceding that phrase. Grandmother reads the statute as follows:

> the district court may appoint a kinship guardian when
>
> [(a)] [C]hild has resided with the [P]etitioner without the parent for a period of ninety days or more immediately preceding the date the petition is filed and a parent having legal custody of . . . [C]hild is currently unwilling or unable to provide adequate care, maintenance and supervision for . . . [C]hild
>
> or
>
> [(b)]   there are extraordinary circumstances.

**{11}** The district court rejected Grandmother's construction of the statute, applying its own close textual analysis of the statutory language. The district court read the extraordinary circumstances requirement as an alternative only to a finding of parental unfitness, concluding that the first clause of the statute requiring residence for ninety days applied to both alternatives: when parents are unable or unwilling to provide adequate care, or when there are extraordinary circumstances. The district court read the statute as follows:

> the district court may appoint a kinship guardian when
>
> child has resided with the petitioner without the parent for a period of ninety days or more immediately preceding the date the petition is filed
>
> and
>
> a parent having legal custody of the child is currently unwilling or unable to provide adequate care, maintenance and supervision for the child or there are extraordinary circumstances.

**{12}** The district court stated that it was basing its conclusion that the ninety-day requirement applied to "both the provision regarding a parent who is unable to parent *and* extraordinary circumstances" (emphasis added), on a strict reading of the text. The district court relied as well, on how easy it would have been, in the court's view, for the Legislature to have created an additional subsection of Section 40-10B-8(B), without the

ninety-day predicate, if the Legislature had intended "extraordinary circumstances," to be an independent basis for a kinship guardianship.

**{13}** The very question raised here about the construction of Section 40-10B-8(B)(3), whether the ninety-day residence requirement applies when kinship guardianship is sought based on "extraordinary circumstances," has arisen previously in this Court. *Stanley J. v. Cliff L.*, 2014-NMCA-029, ¶ 10 n.2, 319 P.3d 662 (internal quotation marks omitted). The majority in *Stanley J.*, however, did not reach this issue, instead concluding that there were no extraordinary circumstances that justified the appointment of a kinship guardian. *Id.* ¶ 16. This remains, therefore, an issue of first impression.

**{14}** We review questions of statutory construction de novo. *State v. Smith,* 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. Our ultimate goal in construing a statute "is to ascertain and give effect to the intent of the Legislature." *Id.* Statutory language must be interpreted and applied to meet the objective our Legislature sought to accomplish. *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. We analyze a statute's function within a comprehensive legislative scheme, with reference to the statute as a whole and in reference to statutes dealing with the same general subject matter. *See id.* ¶ 26. Although we begin by looking to the plain language of the statute, we cannot neglect our obligation to interpret that language in light of "the purpose to be achieved and the wrong to be remedied." *State ex rel. Children, Youth & Families Dep't v. Djamila B.* (*In re Mahdjid B.*), 2015-NMSC-003, ¶ 21, 342 P.3d 698 (internal quotation marks and citation omitted).

**{15}** We do not agree with the district court that the language of Section 40-10B-8(B)(3) is so plain that it should be applied as written, without further analysis of the policies and purposes of the Act, and of Section 40-10B-8(B)(3) in particular. The competing constructions suggested by Grandmother and the district court are both grammatically correct, so that either reading could be the construction intended by our Legislature. Nor are Grandmother's and the district court's conflicting readings of the statute the only options: the extraordinary circumstances phrase, appended to the end of Section 40-10B-8(B)(3), could also be construed to apply separately to each preceding phrase of the statute.

**{16}** When the statutory language is "doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction" we construe the statute "according to its obvious spirit or reason." *State v. Tafoya*, 2010-NMSC-019, ¶ 10, 148 N.M. 391, 237 P.3d 693 (internal quotation marks and citation omitted).

**{17}** Instead of turning to the spirit and reason of the Act, the district court turned to the ease with which the Legislature might have clarified its meaning by creating a separate subsection for "extraordinary circumstances," if the Legislature had intended to adopt Grandmother's construction. The application of this rule of statutory construction does not relieve us of the responsibility to carefully assess the purpose and objectives of the statutory language our Legislature chose to use. *See Perea v. Baca*, 1980-NMSC-079, ¶ 22, 94 N.M. 624, 627, 614 P.2d 541 ("A statute must be read and given

effect as it is written by the Legislature, not as the court may think it should be or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration." (internal quotation marks and citation omitted)).

**{18}** Although the relationship between Section 40-10B-8(B)(3)'s "extraordinary circumstances" language and the ninety-day length of residence requirement is an issue of first impression, both our Supreme Court and this Court have previously explored the intent of our Legislature in enacting the Act. Our Supreme Court has also previously construed Section 40-10B-8(B)(3)'s "extraordinary circumstances" language in relation to the requirement that the child reside with the petitioner "without the parent," and the requirement that the parent have legal custody of the child. *See In re Guardianship of Patrick D.*, 2012-NMSC-017, ¶¶ 24-30, 280 P.3d 909. This Court has construed "extraordinary circumstances" in relation to the requirement that the parent be shown to be "unwilling or unable to care for [the c]hild." *In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶ 3, 145 N.M. 500, 201 P.3d 169; *see Stanley J.*, 2014-NMCA-029, ¶¶ 10-28. We are guided in our analysis by these opinions.

**{19}** In *Patrick D.*, our Supreme Court identified the central purpose of the Act as "ensur[ing] that children in New Mexico have the opportunity to be raised by their relatives when both of their parents are unwilling and/or unable to care for them." 2012-NMSC-017, ¶ 7; *see* § 40-10B-2(A). The Act establishes "procedures and substantive standards for effecting legal relationships between children and adult caretakers who have assumed the day-to-day responsibilities of caring for a child," authorizing kinship caregivers to make decisions for a child generally made by parents, and providing legal authority to obtain medical care and make educational decisions. *In re Mahdjid B.*, 2015-NMSC-003, ¶ 21 (internal quotation marks and citation omitted). The Act is intended to ensure that a child who "is not residing with either parent" has "a stable and consistent relationship with a kinship caregiver, that will enable the child to develop physically, mentally and emotionally to the maximum extent possible when the child's parents are not willing or able to do so." Section 40-10B-2(C). As our Supreme Court has stated, the Act should be applied, in addition, "to allow the parents to maintain or rebuild their relationship with the child when doing so would be in the child's best interests." *Patrick D.*, 2012-NMSC-017, ¶ 15.

**{20}** The central requirement, then, for a kinship guardianship, pursuant to Section 40-10B-8(B)(3), is that the child's parents be "unwilling and/or unable to care for [the child]." *Patrick D.*, 2012-NMSC-017, ¶ 7; *see* § 40-10B-2(A). The Act's purpose is to keep the child with relatives or kinship caregivers with whom they have a significant bond, which our Legislature found is the best possible alternative to parental care. Section 40-10B-2(A). The phrase "or there are extraordinary circumstances," has been construed by this Court in light of the legislative purposes of a kinship guardianship to allow the creation of a kinship guardianship when a parent is not currently "unwilling or unable" to provide adequate care, but where there is instead "a substantial likelihood of serious physical or psychological harm or serious detriment to the child," if the child is placed with the parent. *Victoria R.*, 2009-NMCA-007, ¶ 28 (Pickard, J., specially concurring) (internal

quotation marks and citation omitted). This definition is drawn from our Supreme Court's decision in *In re Adoption of J.J.B.*, 1995-NMSC-026, ¶ 68, 119 N.M. 638, 894 P.2d 994, which adopted this exception to the parental preference doctrine.

**{21}** The construction of "extraordinary circumstances," in Section 40-10B-8(B)(3), as an exception to parental unfitness, however, does not resolve the question raised in this case about the relationship of the ninety-day requirement to "extraordinary circumstances." Our Supreme Court, in its decision in *Patrick D.*, held that our Legislature intended the phrase "extraordinary circumstances" to apply to other requirements found in Section 40-10B-8(B)(3), as well as to the parental unfitness requirement. *Patrick D.*, 2012-NMSC-017, ¶ 29 (internal quotation marks omitted). Our Supreme Court has construed the phrase, "or there are extraordinary circumstances" to demonstrate legislative intent to reject a rigid reading of the threshold requirements of that section. *Id.* ¶¶ 10, 24. Although the length of time the child had resided with the petitioner was not at issue in *Patrick D.*, the related requirement that the child reside with the petitioner "without the parent" for the ninety-day period prior to filing the petition; and the requirement that the parent "ha[ve] legal custody of the child" were at issue. *Id.* ¶¶ 24-30 (internal quotation marks and citation omitted).

**{22}** In this context, our Supreme Court rejected a "rigid textual interpretation," of the threshold requirements of Section 40-10B-8(B)(3), holding that the phrase "or there are extraordinary circumstances," was intended by our Legislature to create a "fail safe to allow courts to ensure that the Act is applied in a manner that adheres to the spirit of the Act." *Patrick D.*, 2012-NMSC-017, ¶ 29. Recognizing that cases where a kinship guardianship is sought "often involve unconventional family structures and unconventional facts[,]" our Supreme Court held that a case may fall within the spirit of the Act, and therefore within the intended scope of Section 40-10B-8(B)(3), "even though the Legislature may have failed to contemplate [the case's] precise facts when it passed the Act." *Patrick D.*, 2012-NMSC-017, ¶ 29.

**{23}** The family circumstances in *Patrick D.* provide a useful example of the construction by our Supreme Court of the requirements of Section 40-10B-8(B)(3). One of the child's parents in *Patrick D.* had consented to the kinship guardianship, the other parent had previously been found by the district court to be unfit to care for the child, resulting in legal custody of the child being vested in the child's grandparents by court order. 2012-NMSC-017, ¶ 1. At the time the petition was filed, the child was residing and being cared for day-to-day by grandparents, pursuant to a custody order. *Id.* ¶¶ 4-6. The child had lived with the petitioning grandparents for more than ninety days at the time the petition was filed, so the length of residence was not at issue. *Id.* ¶ 21. The child's mother, however, had resided with grandparents during that ninety-day period, and participated in the child's care. *Id.* ¶ 2. The father, who had been found to be "unwilling or unable" to parent child, *id.* ¶ 28, objected to the kinship guardianship, claiming that both Section 40-10B-8(B)(3)'s requirement that the child had resided with the petitioner "without the parent for a period of ninety days[,]" *Patrick D.*, 2012-NMSC-017, ¶¶ 10, 24 (emphasis, internal quotation marks, and citation omitted), and the requirement that the parents have legal custody of the child at the time the petition is

filed—neither of which were met—are mandatory and that the kinship guardianship petition should be dismissed on that basis. *See id.* ¶ 29.

**{24}** Although recognizing that the plain language of the threshold requirements for kinship guardianship was not satisfied, our Supreme Court held that the district court had authority to appoint grandparents as the child's kinship guardians because the case involved "unconventional family structures and unconventional facts" falling within the spirit of the Act. *Id.* ¶¶ 27-29, 32. Noting that "even though the Legislature may have failed to contemplate these precise facts when it passed the Act[,]" *id.* ¶ 29, several essential purposes of the Act were served: the mother living in the grandparents' home under the facts of this case facilitated reunification of the child with the child's parents, as intended by the Act, *id.* ¶¶ 33, 35, and it would be an unreasonable reading of the Act to exclude a child from the benefits of the Act because of the technicality that parents were subject to a court order removing legal custody. *Id.* ¶¶ 28-29.

**{25}** Based then on the purposes and objectives our Legislature sought to serve, and on our Supreme Court's construction of the phrase "or there are extraordinary circumstances[,]" we see no indication that our Legislature intended the ninety-day requirement to be construed differently than the other threshold requirements of Section 40-10B-8(B)(3). Where there is no parent who is able or willing to care for child, or where placement in the care of the parent will result in significant harm or deprivation to the child; where the child is living with the petitioner; and where an unconventional family structure satisfies the objectives of the ninety-day residency requirement, the petition adequately states a claim and dismissal without a full hearing is not appropriate.

**II.** **The Unusual Facts and Circumstances Alleged Here State a Claim for a Kinship Guardianship, Pursuant To Section 40-10B-8(B)(3)**

**{26}** In this case, Grandmother alleged both extraordinary circumstances satisfying the purposes of the ninety-day residency requirement, and extraordinary circumstances involving serious detriment to Child if returned to Father's care, as an alternative basis to unfitness of the parent. We conclude that the extraordinary circumstances pleaded by Grandmother, if accepted as true, although not directly included in the language of the Act, are the type of unconventional family circumstances that bring Child's situation within the spirit of the Act and that Grandmother pleaded facts, which, if accepted as true, were sufficient to state a claim for extraordinary circumstances based on the detriment to Child.

**{27}** We first discuss the standard of review applicable to the district court's decision granting Father's motion to dismiss. We then apply that standard of review to the allegations which bring this case within the policy and purposes served by the ninety-day residence requirement. We next address Grandmother's claim that "extraordinary circumstances" provided an alternative to a finding that Father was unable or unwilling to provide adequate care for Child under the standard established by the *J.J.B.* decision.

## A. Standard of Review

**{28}** We review a district court's decision to dismiss a complaint for failure to state a claim de novo. *Healthsource, Inc. v. X-Ray Assocs. of N.M., P.C.*, 2005-NMCA-097, ¶ 16, 138 N.M. 70, 116 P.3d 861. We test "the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Herrera v. Quality Pontiac,* 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181.B.[3] "[T]he motion may be granted only when it appears the plaintiff cannot be entitled to relief under any state of facts provable under the claim." *Runyan v. Jaramillo*, 1977-NMSC-061, ¶ 21, 90 N.M. 629, 567 P.2d 478.

## B. The Extraordinary Circumstances Alleged By Grandmother Are Consistent With the Spirit and Purposes of the Ninety-Day Residence Requirement

**{29}** When we apply our Supreme Court's construction of "extraordinary circumstances" to the facts and circumstances alleged by Grandmother, we conclude that the unusual facts and circumstances and unconventional living arrangement in this case are an example of "extraordinary circumstances" not specifically contemplated by our Legislature, that nonetheless satisfy the purposes and spirit of Section 40-10B-8(B)(3). Although not living with Grandmother in Grandmother's house, without her mother, for ninety days prior to the filing of the petition, Child had lived on the same property as Grandmother since Child's birth. Grandmother had been involved with Child on a daily basis. Grandmother alleged that she had formed the kind of close bond the ninety-day requirement was intended to ensure. The sudden death of Child's mother, who had been Child's physical custodian, and with whom Child had been living, created a crisis not anticipated by the statutory language. Given the unusual living arrangement, where Grandmother had seen Child daily and assisted in her care since her birth, Child's lack of contact with Father for nearly a year based on his noncompliance with an order of a domestic relations court requiring him to improve his parenting skills, and Child's fraught relationship with Father, Child naturally turned to Grandmother and Grandmother stepped in to provide parental care to Child.

**{30}** These allegations, if accepted as true, as they must be for purposes of a motion to dismiss, describe unusual family circumstances that fall within the spirit of the Act and satisfy the purposes of the ninety-day residence requirement; Grandmother and Child have a strong bond, Grandmother has demonstrated her willingness and ability to care for Child, and Grandmother is currently caring for Child. The district court erred in dismissing the petition for failure to allege extraordinary circumstances sufficient to meet the threshold requirements of Section 40-10B-8(B)(3).

---

3In its decision on Father's motion to dismiss and for immediate custody of Child, the district court considered evidence presented at the hearing on that motion. To the extent that testimony supplemented and updated the petition, substituting for an amended petition, the district court did not err in considering that testimony, and we follow suit. We disregard, however, any findings of fact based on the evidence at that hearing as inconsistent with the law requiring the district court to decide a motion to dismiss treating the facts alleged as true, and drawing all inferences in favor of Grandmother.

**C.     The Petition Sufficiently Alleged Facts Supporting Both Father's Inability or Unwillingness to Care for Child and Extraordinary Circumstances Resulting in Serious Detriment to Child, as Defined in** *J.J.B.*

**{31}**     Grandmother sufficiently alleged facts, which if accepted as true, established that Father was either unable or unwilling to provide adequate care for Child. Grandmother pleaded, and introduced to supplement her petition, the findings of the domestic relations court that contact with Father was severely detrimental to Child's mental health, and that Father refused to comply with court-ordered therapy and parenting instruction designed to remedy Father's inability to provide parenting appropriate to meet Child's needs. Grandmother also alleged that, in the opinion of Child's therapist, Child was likely to suffer serious detriment to her physical and mental health if the district court precipitously returned her to Father's custody and care. This allegation was supplemented at the hearing on Father's motion to dismiss with testimony describing Child's severe anxiety and depression, refusal to eat if forced to have contact with Father, and threats to harm herself.

**{32}**     The allegations of the petition, as supplemented by the hearing on the motion to dismiss, therefore, are sufficient to state a claim for kinship guardianship based on Grandmother's allegations of "extraordinary circumstances," as defined in *J.J.B.*

**{33}**     Where the petition states a claim for kinship guardianship, the district court must conduct the evidentiary hearing required by Section 40-10B-8(A) of the Act, and then, considering all of circumstances, determine whether the objectives of the statute, and whether the best interests of child would be served by granting the petition. The district court erred in failing to proceed to a hearing and decision.

**CONCLUSION**

**{34}**     We reverse the dismissal of Grandmother's petition for kinship guardianship and remand for a hearing on whether, under the current circumstances, the appointment of Grandmother as Child's kinship guardian satisfies the requirements of the Act and is in Child's best interests.

**{35}     IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**